IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AVNET, INC. and BSP Software LLC,<br><br>                Plaintiffs/Counter-Defendants,<br><br>    v.<br><br>Motio, Inc.,<br><br>                Defendant/Counter-Plaintiff. | Civil Action No. 1:12-CV-02100<br><br>Hon. Judge Joan H. Lefkow<br><br>Magistrate Judge Sidney I. Schenkier |

**DEFENDANT'S MOTION FOR LEAVE
TO FILE AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

Defendant/Counter-Plaintiff Motio, Inc. ("Motio") respectfully moves this Court for leave to file its Amended Answer, Affirmative Defenses and Counterclaims asserting certain additional causes of action under the Sherman Act. As discussed in detail below, the factual basis for Motio's proposed counterclaim was only identified during the stay of this case while the parties were attempting to settle this matter. Discovery obtained from a third-party which BSP Software LLC ("BSP") and Avnet, Inc. ("Avnet") (collectively "BSP") failed to, but had an obligation to disclose during the discovery period, led to the factual discovery of the good faith basis for the additional counterclaim. In addition, BSP's use of alias email accounts to obfuscate its fraudulent conduct and its subsequent failure to search these alias email accounts or alternatively, identify them to Motio, further prevented Motio from previously asserting its proposed Sherman Act claims.

**I.    INTRODUCTION**

Motio's proposed amended pleading relates to one patent-in-suit, U.S. Patent No. 7,945,589 ("the '589 patent"). It addresses BSP's fraudulent procurement of the '589 patent

and the subsequent misuse of the legal system to perpetuate such fraud in an attempt to monopolize the markets for certain business intelligence software. As discussed below, the documents obtained from a third-party show that BSP fraudulently submitted an instant message chat log ("IM chat logs") to the United States Patent and Trademark Office ("USPTO"), certain portions of which were: **(a)** doctored to remove references to Motio and Motio's products; and **(b)** completely fabricated in order to establish an invention date earlier than the publication date of a prior art reference ("Needamangala").

Importantly, the evidence which reveals such fraudulent conduct only became known to Motio after it obtained and forensically analyzed third-party discovery – a critical third-party whose existence and role, although well known to BSP, was never identified by BSP in its Fed. Civ. P. 26(a)(1) Initial Disclosures, Supplemental Initial Disclosures, or interrogatory answers. Motio was forced to obtain the IM chat logs through the third-party because BSP initially represented that it could not produce any IM chat logs, before ultimately producing some, but not all, of the IM chat logs well after the close of discovery.

## II. FACTUAL BACKGROUND

### A. Prosecution Of U.S. Patent No. 7,945,589

On July 22, 2010, BSP filed its patent application which eventually resulted in issuance of the '589 patent.[1] Thereafter on December 15, 2010, the USPTO issued its first office action rejecting all claims of the application in part based upon the Needamangala reference. In response to the USPTO's rejection of all claims of the application, BSP responded by arguing

---

[1] Plaintiffs filed such application pursuant to the USPTO's accelerated examination program. Such program seeks to accelerate the time period during which an examiner substantively examines an application with a goal of final disposition within one year from the date of filing of the patent application. In exchange for the accelerated timeframe in which the patent application was to be examined under the accelerated program, Plaintiffs were required to meet certain additional requirements above and beyond the standard requirements for a non-accelerated application.

that Needamangala should not be considered prior art and claiming the invention was conceived before the Needamangala publication date. In support of this argument, BSP submitted a sworn "Declaration of Inventors under 37 C.F.R. § 1.131" executed by both named inventors, Andy Rachmiel and Andrew Weiss, on January 18, 2011. The stated purpose of the Declaration was to provide "evidence regarding (i) the conception of the claimed subject matter before the Effective Date, and (ii) the diligence of BSP Software to reduce the claimed invention to practice." (Ex. A)

As part of the Declaration, BSP submitted to the USPTO a purported IM chat log between the two inventors which they represented to be "[t]he substance of the chat session [that] was recorded in a chat log by the Microsoft Windows Live™ Messenger service as XML data, an excerpt of which has been arranged in a tab-delimited table attached as Exhibit A." (Ex. A, ¶5) Importantly, the chat session was offered by the inventors as evidence of their purported conception of subject matter claimed in the '589 patent *before* the effective date of a reference cited by the USPTO in rejecting Applicants' application. Thus, BSP relied upon the submitted chat logs to argue to the USPTO that the reference cited was not prior art and should therefore not be considered in rejecting BSP's patent application.

    **B.**     **BSP Represents It Does Not Possess Critically Important Documents, Then Reverses Course After The Close of Discovery And Produces Some, But Not All Documents**

In preparing for depositions of BSP in June 2013, Motio discovered that BSP did not produce the instant messaging (IM) chat log it submitted to the USPTO nor any additional chat logs which were responsive to Motio's document requests. Thus, on June 3, 2013, counsel for Motio inquired with BSP as to why chat logs had not been produced. (Ex. B) The next day, BSP responded and stated, *inter alia*:

>We understand that, by default, chat logging is not turned on in Windows Live Messenger and the BSP's custodians have not otherwise changed those settings. **<u>As such, there are no IM Chat logs for BSP to produce. We expect that this will settle Motio's concern.</u>**" (Ex. C) (emphasis added).

Apparently realizing that Windows Live Messenger *does* save all chat logs by default, as evidenced by BSP's previous ability to collect IM chat logs and submit them as part of a sworn Declaration to the USPTO years after the chats allegedly took place, BSP changed its position. On June 10, 2013, about a week after it stated that no IM chat logs existed, BSP recanted stating for the first time that it had identified "a number of IM chat logs." (Ex. D) BSP did not explain why the IM chat logs had not been produced previously. Thereafter, on July 11, 2013, after the June 28, 2013 close of fact discovery, BSP produced over **3,700 pages** of IM chat logs it previously represented did not exist. Without explanation, however, the IM chat logs BSP eventually produced **<u>did not</u>** contain a copy of the IM chat logs submitted as part of BSP's sworn Declaration to the USPTO during the prosecution of the '589 patent. Moreover, entire time periods appear to be missing from the IM chat logs produced by BSP.

      C.      **<u>Motio Only Received The Chat Logs At Issue Via Third-Party Discovery</u>**

On June 4, 2013, Motio issued a subpoena for documents to third-party Team Tech Systems, Inc. ("Team Tech"). Prior to the issuance of this subpoena, it became known to Motio during discovery (independently from BSP), that Team Tech, through named inventor Andrew Weiss, was involved in the development of BSP's MetaManager software and one of the products alleged by BSP to be covered by the *other* patent-in-suit (U.S. Pat. No. 8,073,863).

Even though Team Tech had a substantial role in the development of BSP's MetaManager, BSP **<u>failed</u>** to identify Team Tech in its Initial Disclosures as required by Fed. R. Civ. P. 26(a)(1) or in its Supplemental Initial Disclosures. (Ex. E) Moreover, BSP did not identify Team Tech in response to Motio's interrogatory seeking a detailed description of "all

4

design and development activities, by or on behalf of Plaintiff, relating to the subject matter of any claim of any Asserted Patent or any Related Patent including the Persons involved…"[2] (Ex. F, pp. 4-5)

Thereafter, on July 29, 2013, third-party Team Tech, through its attorneys at Greenberg Traurig, produced over **14,000** pages of documents. Contained within this large production by third-party Team Tech were image files of emails between co-owners of BSP Andrew Weiss and Andy Rachmiel relating to their search for IM chat logs during December 2010.[3] Many of these emails between the co-owners of BSP were not produced by BSP in this litigation and only produced by third-party Team Tech. The attachments to these emails contain parts of the IM chat logs submitted to the USPTO by BSP. These emails are dated approximately three weeks before BSP filed its January 18, 2011 response to the USPTO containing the doctored and fabricated IM chat logs.

After numerous requests to BSP and Team Tech, Motio finally obtained the native email files and attachments corresponding to the submitted IM chat logs on September 19, 2013.[4] (Ex. G) It was only after Motio obtained these native files, which contain metadata evidencing the fraud associated with the submission of the doctored and fabricated IM chat logs to the USPTO that Motio could forensically review and analyze the newly produced documents. While Motio began this process, its efforts turned to preparing for the *Markman* hearing which took

---

[2] While the existence of Team Tech became known to Motio during this lawsuit independently of BSP, its failure to identify Team Tech in its Initial Disclosures and then again in its Supplemental Initial Disclosures, as well as in its responses to Motio's interrogatory, was misleading and tantamount to representing that Team Tech had no knowledge regarding the subject matter of this case.

[3] As discussed *infra*, in an attempt to further obfuscate their conduct, Andrew Weiss and Andy Rachmiel used numerous alias email accounts.

[4] After repeatedly insisting that BSP did not have "possession, custody or control" over the personal email account of one of its owners, counsel for BSP produced these native files from Mr. Weiss' purported personal email account.

5

place three weeks later on October 11, 2013.  Shortly after the Court issued its *Markman* opinion on October 18, 2013, the parties became engaged in settlement negotiations with the parties' respective business people meeting on November 11, 2013 leading to a settlement term sheet executed between the parties and a stay of this litigation for over nine months.

### III.     ARGUMENT

Pursuant to Fed. R. Civ. P. 13(e), a court may "permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading."  *Lerman v. Turner*, No. 10 C 2169, 2012 WL 1409526 at *1 (N.D. Ill. April 23, 2012) (quoting 27A Tracy Farrell et al., FEDERAL PROCEDURE, LAWYERS EDITION § 62:209 ("A defendant's motion to amend its answer to assert counterclaims against plaintiff is governed by Fed. R. Civ. P. 13(e) where defendant claims that it was not aware of the facts giving rise to the counterclaims at the time the original answer was served")).  Leave to file amended pleadings pursuant to Fed. R. Civ. P. 15(a)(2) should be freely given by a court when justice requires.  *Id.*

### A.     Motio Only Became Aware Of The Facts Supporting Its Proposed Counterclaims On The Eve Of The Court's Stay And In The Midst Of Settlement Negotiations

As described above, Motio first became aware of the facts supporting its Sherman Act claims **after** it obtained and forensically analyzed third-party discovery from Team Tech on September 19, 2013.  Motio, through no fault of its own, only learned of Team Tech's substantial involvement with BSP through its own investigation, notwithstanding that BSP failed to identify Team Tech as a party with knowledge pursuant to Fed. R. Civ. P. 26(a)(1) or identify Team Tech in response to Motio's interrogatory.

Moreover, BSP withheld over 3,700 pages of IM chat logs for many months until Motio specifically inquired as to why they had not been produced.  While first stating the IM chat logs did not exist, BSP changed its position and eventually produced some, but not all, of the IM chat

6

logs after the close of discovery. Substantially all of BSP's production of these IM chat logs (along with its entire production to date) was designated HIGHLY CONFIDENTIAL pursuant to the Protective Order in a transparent attempt to further obfuscate and hinder Motio's ability to analyze their authenticity.

Motio received the preliminary results of its forensic investigation after the *Markman* hearing late in 2013 during which time the parties were attempting in good faith to negotiate a settlement of this matter. During this time period, the parties were negotiating and then executed a settlement term sheet, with the Court then entering a stay of the litigation. Motio worked in good faith to effectuate settlement between the parties rather than disrupting what appeared to be a complete resolution by making the allegations described herein.

During September 2014 and only a few days after Judge Schenkier determined further settlement negotiations would not be fruitful, Motio moved the Court to lift the stay and enter a scheduling order with a deadline for amendment of pleadings so that it could assert its Sherman Act counterclaims it learned about during the settlement negotiation. (Dckt. #258). Given the discovery conduct by BSP and the intervening stay of the case, Motio's actions in bringing this motion are justified and reasonable, and Motio was diligent in discovering the forensic evidence of BSP's fraud.

**B.      BSP Used Alias Email Accounts To Cover-Up Their Fraudulent Conduct And Hinder Motio Attempts To Obtain Discovery**

As part of a pattern and practice to conceal their fraudulent conduct, Rachmiel and Weiss created and used numerous fictitious alias email accounts to conduct BSP business. To date, Motio has identified at least three alias email accounts used by Rachmiel, Weiss, and/or others at BSP. Importantly, some of these alias email accounts were used by Rachmiel and Weiss to have discussions regarding the prosecution of the '589 patent and the doctored chat logs submitted to

the USPTO. <u>Indeed, the emails between Weiss and Rachmiel containing the doctored IM chat logs were sent and received from one of these alias accounts: "john.porter@wowway.com."</u> Notwithstanding the critical importance of these emails, BSP and Avnet, Inc. failed to search, produce or identify emails from these alias emails accounts.

During the depositions of BSP in June 2013, Motio discovered the extent to which these alias email accounts were used by BSP to conduct business. Thereafter and in response to Motio's June 23, 2013 inquiry regarding why these emails accounts were not searched, BSP provided an intentionally vague response that these email accounts were not under the possession, custody or control of BSP. (Ex. H). Such unsupported attorney statement, however, is contradicted by the real-world evidence. This evidence includes the use of these phony email accounts by Rachmiel and Weiss to correspond about submitting chat logs to the USPTO. Weiss and Rachmiel created and used these alias email accounts when it was beneficial to them in obtaining the '589 patent, but apparently not for discovery in this litigation. Taking BSP's position to its logical conclusion, an owner of any company could absolve the company from producing documents in a case by creating and using an alias email account. Such a position is untenable.

Even assuming, *arguendo*, that BSP did not have possession, custody, or control of the various alias email accounts, BSP failed to identify these email accounts or the Internet Service Provider which hosted such accounts to Motio in its Initial Disclosures. Had BSP done so at the beginning of discovery, Motio would have been able to subpoena and obtain the emails evidencing the fraud on the USPTO over a year before they were ultimately produced by third-party Team Tech.

8

BSP's use of alias email accounts to obfuscate its fraudulent conduct and its subsequent failure to search these email accounts or alternatively, identify them to Motio in its Initial Disclosures, prevented Motio from previously asserting its proposed Sherman Act claims.

### C. Any Prejudice Is Plaintiffs' Own Making

Plaintiffs will not be unduly prejudiced if Motio is granted leave to amend its counterclaims. As described above, BSP did not identify in its initial disclosures or Motio's written discovery the third-party who ultimately produced over 14,000 pages of documents including the IM chat logs at issue. Moreover, BSP withheld production of IM chat logs, first denying they even existed, but then producing over 3,700 pages of such non-existent IM chat logs. The actual chat log submitted to the USPTO, however, was withheld from production by BSP and only produced by third-party Team Tech pursuant to a subpoena well after the close of fact discovery. Plaintiffs will not be unduly prejudiced, but even assuming, *arguendo*, that there is some minor prejudice to Plaintiffs, it is a direct result of BSP's "hide the ball" obfuscatory discovery tactics and failure to comply with its discovery obligations.

Motio would not be forced to file this motion had BSP been forthright and complied with its discovery obligations under the Rules by: **(a)** disclosing Team Tech in its Initial Disclosures as required by Fed. R. Civ. P. 26(a)(1); **(b)** providing a truthful and complete answer to Motio's interrogatory; **(c)** producing the IM chat logs requested by Motio – the very same chat logs BSP was so eager to present to the USPTO in obtaining the '589 patent; and **(d)** producing emails from the alias email accounts used by BSP.

### IV. CONCLUSION

For foregoing reasons, Motio respectfully requests that the Court: (i) grant Motio's Motion for Leave to File Amended Answer, Affirmative Defenses and Counterclaim; (ii) grant

9

Motio leave to file the Amended Answer, Affirmative Defenses and Counterclaim attached hereto as Exhibit I; and (iii) for any further relief this Court deems appropriate.

Dated:  October 2, 2014 Respectfully Submitted,

/s/ Jeffrey M. Drake
Dean A. Dickie
Jeffrey M. Drake
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
225 West Washington Street, Suite 2600
Chicago, Illinois 60606
Telephone:  (312) 460-4200
Facsimile:  (312) 460-4288
dickie@millercanfield.com
drakej@millercanfield.com

Kelly J. Kubasta
KLEMCHUK KUBASTA LLP
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone:  (214) 367-6000
Facsimile:  (214) 367-6001
kelly.kubasta@kk-llp.com

*Counsel for Defendant/Counter-Plaintiff*