**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Avnet, Inc. and BSP Software LLC,

      Plaintiffs/Counter-Defendants,

      v.

Motio, Inc.,

      Defendant/Counter-Plaintiff.

Civil Action No. 1:12-CV-02100

Hon. Judge Joan H. Lefkow

Magistrate Judge Sidney I. Schenkier

**DEFENDANT'S REPLY**
**IN SUPPORT OF ITS MOTION FOR LEAVE**
**TO FILE AMENDED ANSWER,**
**AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

[Redacted Version of SEALED Document]

Dean A. Dickie
Jeffrey M. Drake
Ryan C. Williams
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
225 West Washington Street, Suite 2600
Chicago, Illinois 60606
Telephone: (312) 460-4200
Facsimile: (312) 460-4288
dickie@millercanfield.com
drakej@millercanfield.com
williamsr@millercanfield.com

Kelly J. Kubasta
KLEMCHUK KUBASTA LLP
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001
kelly.kubasta@kk-llp.com

*Counsel for Defendant/Counter-Plaintiff*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II. ARGUMENT .................................................................................................... 2

    A.  Emails Produced Only By Third-Party TeamTech Months After The Close of Fact Discovery Reveal The Doctored and Manufactured Chat Logs ............... 2

    B.  Motio Was Diligent In Pursuing Its Sherman Act Claims .................................... 3

        1.  BSP Should Have Identified Third-Party TeamTech's Involvement With The '589 Patent ............................................................................ 3

        2.  BSP Failed to Search and Produce Documents From The Weiss Email Account ............................................................................................. 4

        3.  BSP Admits It Did Not Search or Even Identify The Alias Email Accounts ................................................................................................. 5

        4.  BSP's Chat Logs Should Have Been Produced At The Beginning of Discovery ............................................................................................. 6

    C.  Weiss' Conduct During His Deposition Further Reveals BSP's Attempts to Obfuscate and Delay ...................................................................................... 7

    D.  Motio's Amended Counterclaim Is Sufficiently Pled And Not Futile ................. 9

        1.  The Legal Standard For Futility .............................................................. 10

        2.  Motio's Amended Counterclaim for Inequitable Conduct Is Not Futile ........................................................................................................ 10

            a.  Avnet's Materiality Argument Should Be Rejected .................... 11

            b.  Avnet's Intent To Deceive Argument Should Be Rejected ......... 13

        3.  Motio's Amended Counterclaim for Walker Process Is Not Futile ......... 14

        4.  Motio's Amended Counterclaim Under Section 1 Of The Sherman Act Is Not Futile ..................................................................................... 14

        5.  Motio's Amended Counterclaim Under Section 2 Of The Sherman Act Is Not Futile ..................................................................................... 16

III. CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009) ...................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007) ...................................................................................15

*Connetics Corp. v. Pentech Pharm., Inc.*,
No. 07 C 6297, 2009 WL 1089552 (N.D. Ill. April 16, 2009) ...............................................10

*Hongbo Han v. United Continental Holdings, Inc.*,
762 F.3d 598 (7th Cir. 2014) ...............................................................................................10

*PNC Equip. Fin., LLC v. Zilberbrand*,
No. 12–cv–03074, 2013 WL 1278602 (N.D. Ill. Mar. 28, 2013) ...........................................11

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447, 113 S. Ct. 884 (1993) ................................................................................16, 17

*Therasense, Inc. v. Becton, Dickinson and Co.*,
649 F.3d 1276 (Fed. Cir. 2011) ........................................................................................12, 14

**Court Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................11

**Other Authorities**

37 C.F.R. 1.56 .............................................................................................................12, 13, 14

## I.    __INTRODUCTION__

Through no fault of its own, September 19, 2013 is the first time Motio received the native version of emails and their attachments that demonstrate BSP's fraud on the Patent and Trademark Office (USPTO) during prosecution of the '589 patent – namely, BSP manipulated and manufactured chat logs in an attempt to convince a USPTO Examiner that a piece of prior art cited against BSP's patent application should not be considered. Motio worked diligently to examine the emails and their attachments forensically after their production, three months after the close of fact discovery.  However, due to the *Markman* schedule and the settlement process which following almost immediately, the forensic analysis was not completed until the parties signed a settlement term sheet and the case was stayed pending settlement.

BSP incredulously accuses Motio of litigation tactics, but ignores totally its own deceitful discovery conduct. As described in Motio's Motion, BSP: (1) failed to identify third-party TeamTech in its Initial Disclosures or interrogatory responses as having involvement with the '589 patent, (2) has still never produced a complete set of IM chat logs containing the chat log at issue, and (3) failed to search "Alias" email accounts used by the co-owners of BSP or identify their Alias email accounts to Motio. Motio's discovery of BSP's fraudulent conduct and its subsequent Motion for Leave to Amend is a direct and proximate result of BSP's own failure to comply with the Federal Rules. Had BSP timely complied with its obligations, Motio would have been in a position to assert its proposed counterclaim much earlier.

Now that BSP has been unsuccessful at covering up the fraud, it is seeking the Court's assistance by opposing Motio's motion for leave to amend its counterclaims. BSP would seek to punish Motio for BSP's use of fake alias email accounts to cover up its fraudulent conduct and subsequent dilatory approach to discovery in this case. The Court should reject BSP's request.

## II.    ARGUMENT

### A.    Emails Produced Only By Third-Party TeamTech Months After The Close of Fact Discovery Reveal The Doctored and Manufactured Chat Logs

BSP's Opposition relies primarily on the incorrect assertion that the emails referenced in Motio's Amended Counterclaims were produced by BSP in 2012. **However, Motio's Amended Counterclaims depend upon the emails and corresponding attachments produced by third-party TeamTech on July 29, 2013.**[1] **These emails and attachments produced by TeamTech have not been produced by BSP.** Notably, the **native versions** of these emails and their attachments were not produced by third-party TeamTech until September 19, 2013, and it is only these native versions that forensically demonstrate that the chat logs were doctored and manufactured. (Ex. J). Until Motio received such native versions of the TeamTech emails, it was impossible for Motio to perform any forensic analysis on the IM chat logs at issue.

More specifically, the IM chat log submitted by BSP to the USPTO with annotations is shown in Exhibit K. The IM chat log is a combination of chat logs including a morning top section (**red box**), with a time-stamp from 10:29AM until 1:56PM, and an evening bottom section (**blue box**), with a time-stamp from 6:03PM to 6:40PM.

Importantly, only the native attachments to the email produced by third-party TeamTech contained the metadata demonstrating that the evening portion of the chat log in the **blue box** was fabricated by BSP. (Ex. J). This metadata relating to the **blue box** was not, and has not been, produced by BSP in this litigation.[2] BSP provides absolutely no explanation for why it did not

---

[1] As described in Motio's Motion, Motio was only able to examine these TeamTech emails and attachments forensically after the native versions were produced on September 19, 2013.

[2] Exhibit J also establishes that BSP doctored the morning section of the chat log submitted to the USPTO by removing reference to Motio and its product MotioCI.

2

produce the email and attachments shown in Exhibit J.[3]

It was only after Motio subpoenaed third-party TeamTech, an entity BSP failed to identify in its Initial Disclosures or in response to Motio's interrogatories, that it received this critical piece of evidence on September 19, 2013.[4] Thus, BSP's repeated statements that Motio had the documents supporting its counterclaim as early as October 2012 is demonstrably false.

Motio did not have the critical documents in October 2012 because BSP's failed to produce or identify the critical documents evidencing the fraud, thereby forcing Motio to obtain the information from a third-party that BSP likewise failed to identify or disclose. As a result, any purported delay in this process is only the result of Plaintiffs' failure to abide by the Federal Rules and "hide the ball" gamesmanship.

B.    **Motio Was Diligent In Pursuing Its Sherman Act Claims**

Motio was diligent in pursuing its Sherman Act claims. As described in Motio's Motion, BSP failed to identify third-party TeamTech in its Initial Disclosures, Supplemental Initial Disclosures, or its interrogatory responses. Moreover, BSP used fake alias email accounts to cover-up its conduct. Such conduct on the part of BSP was the sole reason Motio did not discover BSP's fraudulent conduct sooner.

1.    **BSP Should Have Identified Third-Party TeamTech's Involvement With The '589 Patent**

BSP failed to identify third-party TeamTech in its Initial Disclosures, Supplemental

---

[3] The chat log in question was clearly in the possession of BSP. On January 18, 2011 (a mere 13 months before initiating the present lawsuit and only 9 months before filing a first suit against Motio that was subsequently dismissed), this chat log was submitted to the USPTO along with a sworn affidavit signed by Rachmiel and Weiss.

[4] BSP has previously asserted that the documents and correspondence of TeamTech are not within BSP's possession, custody, or control. Separate counsel (Greenberg Traurig) handled the initial response to the third-party subpoena to TeamTech, including production of the imaged versions of the key emails and attachments. Interestingly, however, BSP's counsel (Foley & Lardner) actually produced the native versions at issue on September 19, 2013. (Ex. G)

Initial Disclosures, or in its interrogatory responses. BSP does not dispute that it failed to identify TeamTech in its Initial Disclosures or interrogatory responses, but instead makes the unsupported argument that Motio should somehow have known about TeamTech's involvement with *both* patents-in-suit. BSP's argument is a red herring.

The TeamTech-related documents referenced by BSP are directed to BSP's MetaManager product and U.S. Patent No. 8,073,863 – the first patent-in-suit. These documents produced by BSP, and referenced in the Kaspar Declaration (Ex. 9), have **nothing** to do with the '589 patent (the second unrelated patent-in-suit) or Motio's proposed counterclaim. TeamTech's involvement with the '589 patent was unknown to Motio until many months into discovery. The specific involvement of TeamTech with the '589 patent should have been identified in BSP's Initial Disclosures and interrogatory responses, as required by the Federal Rules. It wasn't.

### 2. BSP Failed to Search and Produce Documents From The Weiss Email Account

The document that reveals the doctored and manufactured chat logs (Ex. J) is an email from Andrew Weiss' email account "aweiss@teamtechsystems.com" to the BSP alias email account "John Porter." Andy Rachmiel and Andrew Weiss, co-owners of BSP, used alias email accounts to conduct business on behalf of BSP, including using them to cover-up their fraudulent conduct and hinder Motio's attempts to obtain discovery in this matter. (Motion, pp. 7-9)

In its Opposition, BSP states that "BSP conducted a search for potentially relevant[5] information from various personal e-mail accounts not owned and operated by BSP, and concluded that those e-mail accounts were no longer active and therefore unavailable." (Opposition, p. 6). This statement, however, contradicts BSP's prior statements during this litigation in which it admits it <u>did not</u> search Weiss' TeamTech email account. (Ex. L)

---

[5] BSP should have searched for documents that are responsive to Motio's document requests, not merely those it believes are relevant.

Andrew Weiss was an employee and co-owner of BSP when discovery in this case began. In addition and as Exhibit J demonstrates, Weiss used his aweiss@teamtechsystems.com email account to conduct business on behalf of BSP. As such, BSP should have searched and produced documents from Weiss' "aweiss@teamtechsystems.com" email account as Weiss was designated by Motio as one of the custodians to be searched. (Opposition, Ex. 12, p. 2). There can be no doubt that BSP, through co-owner and employee Andrew Weiss, had possession, custody and/or control over this email account.[6]

Had BSP fulfilled its discovery obligations and searched Weiss' email account at the beginning of discovery, Motio would have obtained the email and associated chat logs in question (Exhibit J) early on in this case, rather than two and a half months after the close of fact discovery. BSP provides absolutely no excuse as to why it did not produce these documents.

### 3. BSP Admits It Did Not Search or Even Identify The Alias Email Accounts

As described above, BSP represents in its Opposition that "BSP conducted a search for potentially relevant information from various personal e-mail accounts not owned and operated by BSP, and concluded that those e-mail accounts were no longer active and therefore unavailable."

This statement is demonstrably false. As shown in Exhibit J, one of these "personal" alias email accounts, john.porter@wowway.com was used to send emails back and forth between co-owners of BSP for purposes of collecting documents for prosecution of the '589 patent (a patent-in-suit) a mere 13 months before the onset of this litigation. For BSP to represent that it did not "operate" this email account when the evidence shows otherwise is outrageous and should not be endorsed by the Court. Weiss and Rachmiel – co-owners of BSP – used and accessed these alias

---

[6] Weiss is listed as the registrant of the domain <teamtechsystems.com>.

email accounts when it was beneficial to them in obtaining the '589 patent, but then shielded these alias email accounts from discovery in this litigation.

Tellingly, BSP does not even respond to *why* these alias email accounts were not identified to Motio at the beginning of discovery via BSP's Initial Disclosures or some other mechanism. (Motion, pp. 8-9). Thus, even if BSP was not required to search and produce documents from these alias email accounts (which it was), then BSP should have identified these email accounts and the corresponding Internet Service Provider (ISP) to Motio so that it could have promptly subpoenaed the ISPs for the documents and chat logs at issue.

### 4. BSP's Chat Logs Should Have Been Produced At The Beginning of Discovery

BSP incorrectly states that the parties did not contemplate production of IM chat logs and cites to correspondence between the parties allegedly supporting such position. (Opposition, p. 5). BSP further states that the parties agreed to produce ESI of certain file types, but not IM chat logs. (*Id.*). While the parties did agree to limit ESI production to certain file types, BSP's IM chat logs fall within the scope of such agreement.

The agreement, memorialized in Exhibit 13 to BSP's Opposition, lists a number of file types to be produced, including the "XML" file type. (Opposition, Ex 13, p. 1). BSP's IM chat logs, created using Microsoft's Windows Live Messenger, are stored using the XML file type. In BSP's declaration to the USPTO filed concurrently with the fabricated chat logs, it specifically stated under oath that "The substance of the chat session was recorded in a chat log by the Microsoft Windows Live Messenger service as **XML data**…" (Ex. A, ¶5) (emphasis added). The BSP IM chat logs are stored as XML. As such, BSP's excuses for non-production of IM chat logs should be given no weight by the Court.

Furthermore, BSP's initial response to Motio's inquiry regarding the chat logs – stating

6

the IM chat logs did not exist – truly demonstrates that BSP failed to search for and identify its IM chat logs when the parties searched their respective ESI. (Ex. C). Tellingly, BSP does not explain in its Opposition *why* the 3700 pages of IM chat logs produced after the close of discovery <u>do not</u> contain the IM chat logs submitted to the USPTO during prosecution of the '589 patent. BSP's silence in this regard is deafening.

### C. <u>Weiss' Conduct During His Deposition Further Reveals BSP's Attempts to Obfuscate and Delay</u>

While BSP tries to prop up Weiss' credibility via a sliver of his deposition testimony, other parts of his deposition depict just the opposite and demonstrate BSP's continued efforts to thwart discovery in this case.

For example

**REDACTED**

**REDACTED**

(Ex. M, Weiss Dep. at 358:21 – 360:23).

**REDACTED**

**REDACATED**                                                      [7] Weiss' evasive answers,

coupled with his storming out of the deposition, are consistent with BSP's obfuscatory approach

to discovery in this case.

Following Weiss' original deposition referenced above and after two motions to compel,

Motio was able to depose Weiss for 30 minutes via telephone on the IM chat logs (not including

the one eventually produced by TeamTech revealing the fabricated portion). During this time,

Weiss had ample opportunity to craft the response BSP cites in its Opposition. Again, however,

---

[7] At the time of the Weiss deposition, Motio did not know (and had no reason to believe) that John Porter
was a fictitious person and was only used by BSP as an alias.

due to BSP's failure to produce emails from Weiss' aweiss@teamtechsystems.com email account, Motio did not have complete information regarding the chat logs at issue – and thus was deprived of the opportunity to fully question Weiss on the second **blue** portion described *supra*.

**REDACTED**                                           coupled with BSP's other acts of inequitable conduct detailed in Motio's Amended Counterclaim, further evidenced the need for production of the native version of Exhibit J which, although requested numerous times, Motio did not receive until September 19, 2013.[8]

**D.**     **Motio's Amended Counterclaim Is Sufficiently Pled And Not Futile**

Motio's Amended Counterclaims are sufficiently pled and not futile. Indeed, Motio's Amended Counterclaims describe with specificity and in painstaking detail a fraudulent course of conduct by which the named inventors of the '589 patent: **(a)** intentionally withheld and concealed information material to patentability from the USPTO; **(b)** made false and intentionally misleading statements to the USPTO; and **(c)** knowingly submitted doctored and fabricated chat logs to the USPTO. This fraudulent pattern and practice is described in detail in 73 factual paragraphs alleged in the Amended Counterclaim. (Dckt. #263-1, ¶¶32-105). With demonstrable knowledge of the fraudulent actions alleged, the Amended Counterclaims then describe in detail Plaintiffs' illegal attempts to **(a)** conceal the fraudulent conduct (*id.* at ¶¶111-127); **(b)** BSP's specific intent in obtaining the '589 patent to monopolize the relevant product markets[9] and to "MUCK FOTIO" (*id.* at ¶¶106-110); and **(c)** Plaintiffs' ongoing attempts to monopolize the relevant product markets by asserting the fraudulently obtained '589 patent and pursuing this sham litigation (*id.* at ¶¶128-146; 278-325). This breadth of specific factual allegations is more than sufficient to satisfy the liberal pleading standards to survive a motion to

---

[8] BSP still refuses to produce the native versions of the chat logs it previously produced citing every excuse it can. BSP's conduct in this regard further shows its hide the ball discovery tactics.
[9] The relevant product markets are described in detail in Paragraphs 284-298.

dismiss.

### 1.    The Legal Standard For Futility

An amendment is futile if it would not survive a motion to dismiss. *Connetics Corp. v. Pentech Pharm., Inc.*, No. 07 C 6297, 2009 WL 1089552, *2 (N.D. Ill. April 16, 2009) (citing *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.,* 383 F.3d 552, 558 (7th Cir. 2004); *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n,* 377 F.3d 682, 687 (7th Cir. 2004)). In deciding a motion to dismiss, the Court must accept facts alleged in the complaint as true and draw all reasonable inferences from those facts in favor of the non-moving party. *Hongbo Han v. United Continental Holdings, Inc.*, 762 F.3d 598**,** 600 (7th Cir. 2014); *see Connetics Corp.*, 2009 WL 1089552 at *2 (accepting defendants' allegations as true and holding that an amended claim for inequitable conduct was not futile). Viewing the facts in this light, dismissal is only appropriate if the non-moving party fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)).

### 2.    Motio's Amended Counterclaim for Inequitable Conduct Is Not Futile

Motio's Amended Counterclaim for inequitable conduct (Count V) is not futile because it pleads with specificity that the named inventors of the '589 patent: (1) made affirmative misrepresentations of material fact, failed to disclose material information, or submitted false material information to the USPTO; and (2) intended to deceive the USPTO. *Connetics Corp.*, 2009 WL 1089552, *5 (quoting *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008)). In *Connetics Corp.,* Judge Gottschall held that an amended claim of inequitable conduct was sufficient to withstand a motion to dismiss where the defendants alleged that a single academic article was withheld from the USPTO. 2009 WL 1089552 at *1, *5.

Far above and beyond what was alleged in *Connetics Corp.,* in the instant case, Motio

alleges in detail a fraudulent pattern of conduct employed by the named inventors of the '589 patent on the USPTO. To wit, Motio alleges with factual specificity that the named inventors of the '589 patent: **(a)** had demonstrable knowledge of material information that was intentionally withheld from the USPTO (Dckt. ##263-1, ¶¶34-51); **(b)** deliberately selected terms for the Pre-Examination Search Document designed to misidentify and exclude the "most closely related" references (*id.* at ¶¶52-57); **(c)** intentionally failed to disclose multiple material Cognos documents to the USPTO (*id.* at ¶¶58-63); **(d)** intentionally failed to disclose multiple material Cognos training materials to the USPTO (*id.* at ¶¶64-72); **(e)** made numerous false and misleading statements to the USPTO (*id.* at ¶¶73-81); and **(f)** submitted doctored and completely fabricated chat logs to the USPTO (*id.* at ¶¶52-99). Motio's Amended Counterclaim goes on to allege that the course of fraudulent conduct, described in detail in Paragraphs 32-99, was material to patentability of the '589 patent and was done with intent to deceive the USPTO. (*Id.* at ¶¶100-105). These allegations, which must be accepted as true and with all inferences drawn in favor of Motio, are more than sufficient to state a claim of relief for inequitable conduct that is plausible on its face.

### a.     Avnet's Materiality Argument Should Be Rejected

Avnet's sole argument with regard to materiality is that the USPTO did not rely on one aspect of the named inventors' fraudulent conduct – the submission of doctored and fabricated chat logs. (Opposition, p. 15). Avnet's argument should be rejected for three cogent reasons.

<u>**First**</u>, in making this argument, Avnet improperly relies on materials outside of the Amended Counterclaim. The standards are clear that a court may not consider materials outside of the pleadings in considering a motion to dismiss. *See PNC Equip. Fin., LLC v. Zilberbrand*, No. 12–cv–03074, 2013 WL 1278602, *5 n.13 (N.D. Ill. Mar. 28, 2013) (Judge Lefkow) (refusing to consider materials outside of the pleadings in denying a Rule 12(b)(6) motion to

11

dismiss).

**Second**, as specifically alleged by Motio, the conduct of submitting fraudulently doctored and fabricated chat logs to the USPTO is material. 37 C.F.R. 1.56, entitled "Duty to disclose information material to patentability," provides: "However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct." (emphasis added). Motio has specifically alleged that the named inventors practiced fraud on the USPTO and engaged in bad faith and intentional misconduct by, in part, submitting to the USPTO: **(a)** a doctored chat log with reference to Motio's material product intentionally removed; and **(b)** a fraudulently created and completely made up chat log. (Dckt. #263-1, ¶¶82-99).

Moreover, the Amended Counterclaim specifically alleges that the fraudulent submission of doctored and fabricated chats logs constitutes affirmative egregious misconduct. (Dckt. #263-1, ¶¶99, 262, 266-267, 272, 276-277). "When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, **the misconduct is material.**" *Therasense, Inc. v. Becton, Dickinson and Co.,* 649 F.3d 1276, 1292 (Fed. Cir. 2011). Motio alleges with specificity that Rachmiel and Weiss engaged in affirmative egregious misconduct by submitting an "unmistakably false affidavit" to the USPTO falsely attesting to the accuracy and authenticity of the altered and doctored chat logs. (*Id.* at ¶¶82-99).

Under 37 C.F.R. 1.56 and *Therasense,* these specifically pled allegations of fraud, bad faith, and affirmative egregious misconduct demonstrate materiality as a matter of law. Very simply, had the USPTO been aware of the fraud, **or even attempted fraud**, it would not have granted the '589 patent. Accordingly, accepting the allegations of the Amended Counterclaims as true and drawing all inferences in favor of Motio, the specifically alleged fraud, bad faith, and

12

intentional misconduct with regard to the chat logs satisfies the materiality pleading requirement.

**Third**, Avnet's materiality argument focuses exclusively on the fraudulently created and submitted chat logs. Even assuming, *arguendo*, the fraudulent chat logs alone were somehow not material – an argument directly contrary to 37 C.F.R. 1.56 – Motio did not just allege that Rachmiel and Weiss submitted doctored and fake chat logs. Motio alleges with great specificity an ongoing pattern and practice of fraudulent misconduct of which the fraudulent chat logs were just one part. (Dckt. #263-1, ¶¶32-105). Avnet fails to address the other multitude of factual allegations demonstrating the named inventors' fraudulent and deceitful conduct, all of which are more than sufficient to state a claim for inequitable conduct.

### b. Avnet's Intent To Deceive Argument Should Be Rejected

Just as Avnet's materiality argument should be rejected, so to should its argument regarding the named inventors' intent to deceive the USPTO. Avnet summarily contends that Motio has not pled facts sufficient to establish intent to deceive and once again goes outside the Amended Counterclaims to provide Weiss' self-serving and nonsensical explanation for the doctored and fabricated chat logs. Even assuming *arguendo* that his far-fetched explanation includes a shred of truth, Weiss' purported explanation is material outside the pleadings that should not be considered by this Court and is wholly irrelevant to the only issue at hand: whether Motio has alleged facts sufficient to plausibly show intent to deceive the USPTO.

In considering the only relevant issue, Motio has alleged facts sufficient to show intent to deceive to USPTO. Motio has alleged an ongoing pattern and practice of fraudulent and intentional misconduct specifically designed to deceive the USPTO. In addition to alleging demonstrable knowledge of withheld material information (Dckt. #263-1, ¶¶32-72) and the intentional submission of false and misleading statements (*id*. at ¶¶32-72), Motio further alleges that Rachmiel and Weiss manually edited the chat logs to remove material information and

13

manufactured fake conversations that did not actually occur (*id.* at ¶¶82-99). The allegations that Rachmiel and Weiss submitted doctored and fake chat logs to the USPTO in support of the application for the '589 patent are more than sufficient to plausibly allege intent to deceive.[10]

### 3. Motio's Amended Counterclaim for *Walker Process* Is Not Futile

Motio's Amended Counterclaim for *Walker Process* (Count VII) is not futile. As described in detail above and in the Amended Counterclaim, Motio has specifically alleged an ongoing pattern and practice of fraud on the USPTO. (Dckt. #263-1, ¶¶32-105). The only argument presented by Avnet for the purported futility of the *Walker Process* claim is that fraudulent chat logs were "not material." (Opposition, p. 16). As explained in Section II.D.2.a, *supra*, fraud, attempted fraud, bad faith, or affirmative egregious misconduct practiced on the USPTO is material. 37 C.F.R. 1.56; *Therasense,* 649 F.3d at 1292.

Moreover, Avnet's argument regarding the *Walker Process* claim only addresses the fraudulent chat logs and again ignores the other multitude of allegations of material misconduct and fraud presented in support of the *Walker Process* claim. (Dckt. #263-1, ¶¶32-105). Accordingly, accepting the factual allegations as true and drawing all inferences in favor of Motio, Motio has presented allegations sufficient to state a *Walker Process* claim that is plausible on its face.

### 4. Motio's Amended Counterclaim Under Section 1 Of The Sherman Act Is Not Futile

Motio's Amended Counterclaim under Section 1 of the Sherman Act (Count IX) is not futile. In support of its argument that the Section 1 Sherman Act claim is futile, Avnet incorrectly contends that Motio did not allege "plausible ground to infer an agreement" between BSP and

---

[10] Motio agrees that Rachmiel and Weiss did a "truly lousy job" of doctoring the chat logs (Opposition, p. 16), such that their fraudulent conduct is readily evident upon forensic analysis of the withheld native chat logs.

Avnet. (Opposition, p. 17) (quoting *Twombly,* 550 U.S. at 555). "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly,* 550 U.S. at 556.

A simple reading of Motio's Amended Counterclaim belies Plaintiffs' assertion. Motio alleges a multitude of facts from which an agreement between BSP and Avnet can be plausibly inferred. (Dckt. #263-1, ¶¶128-146, 314-325). First and foremost, and as specifically alleged by Motio in its Amended Counterclaim, it is undisputed that Avnet entered into an agreement to purchase BSP, thereby obtaining ownership of the patents-in-suit and all rights associated with the patents. (*Id.* at ¶¶128-129). Motio's Amended Counterclaims further allege that: **(a)** Rachmiel and Weiss were the former owners of BSP and engaged in the fraudulent conduct to obtain the '589 patent to drive BSP's primary competitor out of the relevant product markets (*id*. at ¶¶10-11; 130; 281-283; 302-311); **(b)** Avnet was aware of BSP's fraud and misconduct on the USPTO at the time that it acquired BSP (*id*. at ¶¶128-130; 317); **(c)** prior to the closing of the sale in November 2012, BSP represented to Avnet that if successful in this lawsuit, it would drive Motio out of the relevant markets, thereby giving Avnet a monopoly in the relevant markets (*id.* at ¶¶128-133; 316-325); and **(d)** after acquiring BSP in November 2012, Avnet, actively concealed the fraudulent conduct from Motio and the Court (*id.* at ¶¶111-127).

As additional evidence of the agreement to monopolize the relevant product markets, the Amended Counterclaims list in detail certain of the anti-competitive actions taken by Avnet since its agreement to purchase BSP, including the continued pursuit of this sham litigation despite knowledge of the fraudulent conduct underlying the '589 patent and its singular attacks of its only competitor in the relevant product markets – Motio. (*Id.* at ¶¶132-146). Telling of

Avnet's intent in purchasing BSP and monopolizing the market is a statement found on Avnet's website: "If you're going to partner with an organization and trust your environment into their product's hands, you want to know that the vendor **will be around for the long haul**." (*Id.* at ¶143, Ex. C to Amended Counterclaims). The clear implication of Avnet's statement is that Motio will **not** "be around for the long haul" because Avnet is going to drive Motio out of business and monopolize the relevant product market.

Accepting the breadth of factual allegations as true and drawing all inferences in favor of Motio, the Amended Counterclaims provide plausible grounds to infer an agreement between BSP and Avnet. Accordingly, Motio's Amended Counterclaim under Section 1 of the Sherman Act is not futile.

### 5. Motio's Amended Counterclaim Under Section 2 Of The Sherman Act Is Not Futile

Avnet's final argument that Motio has not alleged a claim for attempted monopolization under Section 2 of the Sherman Act (Count VIII) is again incorrect. The only argument presented by Plaintiffs is that Motio has not alleged Avnet's "market power." (Opposition, p. 18). In making this argument, Plaintiffs erroneously provide the legal elements for a claim of monopolization, as opposed to a claim for attempted monopolization. (*Id.* at p. 18 n.2). For a claim of attempted monopolization under Section 2 of the Sherman Act, the plaintiff must plead: (1) that the defendant has engaged in predatory or anticompetitive conduct; (2) with a specific intent to monopolize; and (3) a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 447, 113 S. Ct. 884 (1993). In considering the issue of dangerous probability of monopolization, courts should consider the relevant market and the defendant's ability to lessen or destroy competition in the market. *Id.* at 456.

Contrary to Avnet's conclusory assertion, Motio's Amended Counterclaims more than

sufficiently describe a dangerous probability that Avnet will achieve monopoly power. (Dckt. #263-1, ¶¶128-146; 284-298). Through its Amended Counterclaims, Motio describes the relevant product markets in detail. (*Id.* at ¶¶284-298). In terms of competition, or lack thereof, in the relevant product markets, the Amended Counterclaims allege that there are only two primary competitors – Avnet and Motio. (*Id.* at ¶286). The Amended Counterclaims allege that Avnet and Motio account for approximately 95% of sales in the relevant markets. (*Id.* at ¶¶290, 296-297). The Amended Counterclaims further allege that Motio rarely bids against any other competitors and that Motio competes near exclusively with Plaintiffs. (*Id.* at ¶¶291-292; 296-297). The Amended Counterclaims specifically allege that should Motio be driven out of the relevant markets, Avnet will be the only remaining player and that there is dangerous probability that Avnet will achieve monopoly power. (*Id.* at ¶298).

In fact, Avnet itself aptly describes its very real ability to monopolize the markets through a side-by-comparison of Avnet and Motio in its own advertisements. (*Id.* at ¶¶133-146, Exs. B and C to Amended Counterclaims). In the side-by-side comparison, Avnet touts itself as having $26 billion dollars in annual sales and over 17,500 employees, while mocking Motio's mere $2 million in annual sales and 25 employees. (*Id.*). Avnet's advertising also proclaims that Motio will not "be around for the long haul," the reasonable implication of which is that Avnet will use its size and resources to crush its only competitor – Motio. (*Id.* at ¶298, Ex. C to Amended Counterclaims). Avnet's own declarations and side-by-side comparison of itself and Motio dispels any notion that it does not have a plausible ability to achieve monopoly power.

Simply put, the detailed allegations establish that there are two competitors in the market: a David and a Goliath. That Goliath, with billions of dollars in sales and thousands of employees, most certainly *ipso facto* has market power and resources sufficient to destroy its only David

competitor and to monopolize the markets. Accordingly, accepting the factual allegations as true, including **Avnet's own assertions, descriptions, and comparisons,** and drawing all inferences in favor of Motio, Motio has plausibly alleged that Avnet has sufficient market power to create a monopoly.

III.     **CONCLUSION**

For the reasons set forth above and in its Motion, Motio respectfully requests that this Court grant its Motion for Leave to File Amended Answer, Affirmative Defenses, and Counterclaims; and for any further relief this Court deems appropriate.

Dated: October 20, 2014                       Respectfully Submitted,

/s/ Jeffrey M. Drake
Dean A. Dickie
Jeffrey M. Drake
Ryan C. Williams
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
225 West Washington Street, Suite 2600
Chicago, Illinois 60606
Telephone: (312) 460-4200
Facsimile: (312) 460-4288
dickie@millercanfield.com
drakej@millercanfield.com
williamsr@millercanfield.com

Kelly J. Kubasta
KLEMCHUK KUBASTA LLP
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001
kelly.kubasta@kk-llp.com

*Counsel for Defendant/Counter-Plaintiff*