IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AVNET, INC. and | ) | |
| BSP SOFTWARE, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 12 C 2100 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| MOTIO, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Defendant Motio, Inc. ("Motio") asks the court for leave to file an amended answer alleging an affirmative defense and additional counterclaims. (Dkt. 263.) For the reasons stated below, Motio's motion is granted.

**BACKGROUND**

On March 22, 2012, Plaintiff BSP Software, LLC ("BSP") filed suit against Motio alleging infringement of Patent Nos. 7,945,589 (the '589 patent) and 8,073,863 (the '863 patent). (Dkt. 1.) Motio filed an answer denying BSP's allegations and seeking a declaratory judgment that the patents are invalid or, in the alternative, were not infringed. (Dkt. 12.) Avnet, Inc. ("Avnet") acquired BSP later that year and obtained all rights to BSP's intellectual property, including the '589 and the '863 patents. (*See* dkt. 153 at 1.) BSP filed a motion to substitute Avnet as plaintiff in July 2013. (Dkt. 144.)

In January 2014, the court stayed the case in light of the parties' interest in settlement. (Dkt. 239.) The parties engaged in settlement talks until September 2014,

1

when the magistrate judge concluded that, based on the parties' report, further settlement discussions would not be fruitful. (*See* dkt. 257.)

Once settlement talks ceased, Motio moved for a new case management schedule. (Dkt. 258.) The court granted Motio's motion and a new scheduling order was entered on August 25, 2014. (Dkts. 260, 262.) A week later, Motio filed the instant motion for leave to amend. (Dkt. 263.) Motio's motion seeks to file three additional counterclaims, all of which allege violations of the Sherman Act, and the affirmative defense of inequitable conduct. The additional counterclaims and affirmative defense pertain only to the '589 patent. (*Id.*)

At the core of Motio's counterclaims is the allegation that BSP procured the '589 patent through intentional fraud on the U.S. Patent and Trademark Office ("USPTO"). Motio claims that by filing a suit to enforce the fraudulently obtained patent, BSP attempted to form a monopoly in violation § 2 of the Sherman Act. Motio also claims that by acquiring BSP, Avnet and BSP entered into a conspiracy to restrain trade in violation of § 1 of the Sherman Act. BSP and Avnet (together "Plaintiffs") dispute these claims.

## LEGAL STANDARD

Once a pleading can no longer be amended as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Federal Rule of Civil Procedure 15(a)(2) directs courts to "freely give leave when justice so requires." *Id.* This generous standard reflects the Rule's "liberal attitude towards the amendment of pleadings." *Soltys* v. *Costello*,

520 F.3d 737, 743 (7th Cir. 2008) (quoting *Campania Mgmt. Co.* v. *Rooks, Pitts & Poust*, 290 F.3d 843, 848–49 (7th Cir. 2002)) (internal quotation marks omitted).

Courts may refuse to grant leave if, however, there is undue prejudice to the non-movant. *Hukic* v. *Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). Courts may also refuse to grant leave if "the moving party unjustifiably delayed in presenting its motion to the court, repeatedly failed to cure deficiencies, or if the amendment would be futile." *Gandhi* v. *Sitara Capital Mgmt., LLC*, 721 F.3d 865, 868–69 (7th Cir. 2013) (citing *Hukic*, 588 F.3d at 432). An amendment is futile when "the new pleading would not survive a motion to dismiss." *Id.* at 869 (citing *Brunt* v. *SEIU*, 284 F.3d 715, 720–21 (7th Cir. 2002)).

Plaintiffs argue for a different standard, claiming Motio must show good cause in order to amend its pleading. (Dkt. 273 at 9–10.) Although a motion for leave to amend a complaint is generally evaluated under Rule 15(a)(2), that Rule is in tension with Rule 16, which governs scheduling orders. *Alioto* v. *Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). Rule 16 directs district courts to issue scheduling orders as soon as practicable, and to include in those orders a deadline for filing amended pleadings. Fed. R. Civ. P. 16(b)(2), (b)(3)(A). Once the schedule is set, it can be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Plaintiffs argue that because the deadline for amending pleadings has passed, Motio must show good cause in order to assert additional counterclaims. (Dkt. 273 at 9–10). The Seventh Circuit has held that when the deadline for amending pleadings has passed, a district court is "entitled to apply the heightened good-cause standard of Rule 16(b)(4) before

3

considering whether the requirements of Rule 15(a)(2) were satisfied." *Alioto*, 651 F.3d at 719.

## ANALYSIS

**I.     Good Cause**

The primary consideration in determining whether a litigant has established good cause is the diligence of the party seeking amendment. *Id.* at 720 (citing *Trustmark Ins. Co.* v. *Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005)).  Plaintiffs claim that Motio "waited nearly two years since being provided with the very documents that form the basis for its new claims and defenses" to file its motion to amend. (Dkt. 273 at 13 (emphasis removed).)  Motio, however, maintains that BSP did not produce all relevant documents.  (Dkt. 263 at 3–4.)  According to Motio, BSP only produced some of what Motio claims are "critically important" IM chat logs.  (*Id.*)  Motio had to subpoena the remaining chat logs from third party Team Tech Systems, Inc. ("Team Tech")—a third party that, despite its connections to BSP (and specifically with the '589 patent), Motio claims BSP never identified in its initial disclosures or its responses to Motio's interrogatories.  (*Id.* at 4.)

Plaintiffs argue that even if Motio is correct, and BSP did not produce all relevant documents, Motio had "every opportunity to timely seek leave" since the production of documents that Motio alleges give rise to its proposed claims.  (Dkt. 273 at 13.) Plaintiffs claim this production was in October 2012.  (*Id.*)  Motio, however, insists that it only became aware of the facts supporting its Sherman Act claims when it forensically analyzed the documents produced by Team Tech.  (Dkt. 283 at 1.)  Motio states that it did not receive the native version of these documents—the version needed to perform

4

forensic analysis—until September 2013, over a year later. (*Id.*) Although Motio did not file its motion to amend until October 2014, Motio explains that due to the *Markman* hearing and the settlement process that followed, "the forensic analysis was not completed until the parties signed a settlement term sheet and the case was stayed pending settlement." (*Id.*)

Motio further alleges that BSP attempted to keep relevant documents from Motio by failing to name potential custodians. (Dkt. 263 at 3–5.) Motio also claims that BSP used alias email accounts to cover up its fraudulent conduct and hinder Motio's attempts at discovery. (*Id.* at 7–9.) Although Plaintiffs dispute these claims, Motio's allegations sufficiently explain its delay in filing its motion to amend. Motio, therefore, has demonstrated good cause as required by Rule 16(b)(4).

## II. Undue Prejudice

BSP and Avnet argue, in the alternative, that Motio's counterclaims are highly prejudicial. As Plaintiffs explain, they were never put on notice that the case would involve antitrust claims and now find themselves forced to defend claims they did not contemplate during discovery. (Dkt. 273 at 14.) Plaintiffs are correct that the affirmative defense and counterclaims will require (and have already required) additional work. Given the seriousness of the claims, however, and Motio's diligence in pursuing them, the prejudice that BSP and Avnet will face is not *undue* prejudice.

## III. Futility

Plaintiffs further argue that Motio's new claims would be futile. (*Id.* at 15.) As noted above, an amendment is futile when "the new pleading would not survive a motion to dismiss." *Gandhi*, 721 F.3d at 869 (citing *Brunt*, 284 F.3d at 720–21).

5

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts and draws all reasonable inferences from those facts in the complainant's favor. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011); *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the complainant need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). "Federal pleading rules call for 'a short and plain statement of the claim showing the pleader is entitled to relief' . . . . [T]hey do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson* v. *City of Shelby*, 574 U.S. ---, 135 S. Ct. 346, 346, --- L. Ed. 2d --- (2014) (per curiam) (citation omitted). In assessing the futility of Motio's counterclaims and affirmative defense, the court will treat Motio's proposed amended answer as a complaint.

Motio has alleged three counterclaims: *Walker Process* fraud under § 2 of the Sherman Act, sham litigation and attempted monopolization under § 2 of the Sherman Act, and conspiracy in restraint of trade under § 1 of the Sherman Act. (Dkt. 263, ex. I

("Am. Compl.").) Motio has also asserted the affirmative defense of inequitable conduct. (*Id.*)

   A.   *Walker Process* **Fraud**

Motio claims that Plaintiffs violated § 2 of the Sherman Act by filing suit alleging infringement of a fraudulently acquired patent. (*Id.* at 64.) This type of claim is known as a "*Walker Process*" claim, named for the Supreme Court's decision in *Walker Process Equip., Inc.* v. *Food Mach. & Chem. Corp.*, 382 U.S. 172, 86 S. Ct. 347, 15 L. Ed. 2d 247 (1965). Although patents are typically exempt from antitrust liability, proof that the patentee "obtained the patent by knowingly and willfully misrepresenting facts to the Patent Office" is sufficient to strip the patentee of this exception. *Id.* at 177.

In order to succeed on a *Walker Process* claim, a litigant must demonstrate that the patentee obtained the patent by knowingly and willfully misrepresenting facts to the USPTO and that the party enforcing the patent (if different from the patentee) was aware of the fraud when bringing the suit. *Nobelpharma AB* v. *Implant Innovations, Inc.*, 141 F.3d 1059, 1068–69 (Fed. Cir. 1998). The litigant's claim must be based on "independent and clear evidence of deceptive intent together with a clear showing of reliance, *i.e.,* that the patent would not have issued but for the misrepresentation or omission." *Id.* at 1071. Finally, the litigant must meet the necessary elements of the underlying antitrust violation. *Id.*

"Like all fraud-based claims, *Walker Process* allegations are subject to the pleading requirements of Fed. R. Civ. P. 9(b)." *Medimmune, Inc.* v. *Genentech, Inc.*, 427 F.3d 958, 967 (Fed. Cir. 2005), *rev'd and remanded on other grounds*, 549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007). "In all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). In alleging the necessary elements of the underlying antitrust violation, a litigant must establish that the requested relief is plausible on its face. *Twombly*, 550 U.S. at 555.

### 1. Fraudulent Conduct

Motio alleges that BSP "procured the '589 patent through intentional and fraudulent conduct on the USPTO" including the use of incomplete search terms, incomplete disclosures, false and misleading statements, and fraudulently doctored chat logs. (Am. Compl. at 64.) Motio further alleges that BSP was aware of the fraudulent conduct in procuring the '589 patent both at the time the patent was issued and at the time it initiated this suit. (*Id.*) Finally, Motio alleges that BSP acted with deceptive intent and that the USPTO justifiably relied on BSP's fraudulent conduct in issuing the '589 patent. (*Id.*)

The '589 patent was considered pursuant to the USPTO's Accelerated Examination Program, which aims to obtain final disposition of an application within a year. (*Id.* at 13.) The program shifts responsibility to the applicant for certain tasks so that the Examiner's burden is lessened. (*Id.*) For example, "applicants seeking an accelerated determination are charged with the responsibility of advising the USPTO of the 'most closely related' prior art." (*Id.* at 14.)

Motio alleges that BSP deliberately selected search terms in order to exclude prior art and, on at least three occasions, failed to identify as "most closely related" highly relevant products with which BSP was intimately acquainted—including Motio's

8

product. (*Id.* at 16.) The '589 patent covers software to optimize IBM's Cognos Business Intelligence Software ("Cognos"). (*See id.* at 17.) This software includes version control (a feature that records changes to a file over time so that a user can recall specific versions later). (*See id.*) Both Andrew Rachmiel and Andrew Weiss, the named inventors of the '589 patent, are former employees of Cognos Corporation "and have intimate knowledge of Cognos." (*Id.*) They also have intimate knowledge of Motio's product, MotioCI, a "central and marquis" feature of which is version control for Cognos. (*Id.*) Indeed, Motio claims that before this suit, "BSP worked cooperatively with Motio to market the MotioCI product . . . ." (*Id.*) In a 2006 email to a potential buyer, "Rachmiel specifically touted the MotioCI product by stating that 'the version control is so powerful . . . .'" (*Id.*) Motio alleges numerous other ways in which BSP was familiar with MotioCI, including an instant message that Rachmiel sent to a Motio employee detailing Rachmiel's understanding of how the product works. (*Id.* at 17–18.) Despite this knowledge and understanding of Cognos and MotioCI, BSP did not include the terms "Cognos," "Motio," or "MotioCI" in its Pre-Examination Search Document, the result of which was skewed and incomplete search results. (*Id.* at 19.)

Motio also claims that BSP intentionally withheld material references to the documentation included with Cognos software installation as well as other material references from Cognos training materials. (*Id.* at 19–21.) Motio further alleges that BSP made false and misleading statements to the USPTO, including intentionally misrepresenting the version control functionality in Motio's MotioCI product. (*Id.* at 24.)

In addition, Motio alleges that BSP attempted to cover-up its knowledge of Motio's product by deleting references to Motio and Motio's product in the chat logs

9

submitted to the USPTO. (*Id.* at 25.) Following BSP's successful petition for accelerated examination, the USPTO rejected BSP's claims, stating that they were obvious in light of the prior art. (*Id.*) In response, Rachmiel and Weiss argued that the patent's claimed invention was conceived before the critical prior art. (*Id.* at 26.) In support of this claim, Rachmiel and Weiss submitted a sworn declaration. (*Id.*) The inventors attached an IM chat log to the declaration as evidence that they conceived of the subject matter claimed in the '589 patent before the effective date of the prior art cited by the USPTO. (*Id.*) Motio alleges that the chat log was manually edited to remove all references to Motio and MotioCI and that Rachmiel and Weiss "removed additional non-material words and phrases so the doctored conversation makes sense, appears to flow naturally, and provides no indication that material portions of the [conversation] were deleted." (*Id.* at 27.) Motio further claims that Rachmiel and Weiss fraudulently manufactured fake conversations to make it appear as though they had conceived of the claimed invention prior to the date of the crucial prior art. (*Id.*)

Motio asserts that the materials BSP failed to submit to the USPTO were not cumulative of other materials cited during prosecution of the application but rather were highly material. (*Id.* at 28.) Motio further asserts that but for BSP's conduct—its use of knowingly deceptive, incomplete search times, its incomplete disclosures, its false and misleading statements, and its submission of fraudulently doctored chat logs—the USPTO would not have granted the '589 patent. (*Id.* at 28–29.) In response, BSP argues that the IM chat lots were not doctored and were not relied on by the USPTO.

In assessing the alleged futility of Motio's *Walker Process* claim, the court accepts as true Motio's allegation that BSP doctored the chat logs. *See Gandhi*, 721 F.3d

at 869; *Active Disposal*, 635 F.3d at 886. As for reliance, BSP argues that the USPTO did not rely on the chat log because it expressly stated that the chat log was insufficient. (Dkt. 273 at 7.) Indeed, the USPTO found that the evidence BSP submitted was insufficient to establish "alleged actual reduction to practice"—the standard the inventors had to meet with the submission of the sworn declaration. (*Id.*, ex. 16 at 5.) BSP insists that, as a result, "the Examiner ignored the declaration and chat logs." (*Id.* at 7.) BSP asserts that therefore "[t]he claims indisputably were allowed and issued by the PTO based on other amendments, completely independent from the inventors' declaration." (*Id.* at 8.)

As a preliminary point, the Examiner did not *ignore* the declaration and chat logs; it considered them seriously enough to determine they were insufficient. BSP is correct, however, that the USPTO does not appear to have relied on the chat logs in issuing the patent. There is an exception to the "but-for materiality" requirement of a fraud claim, however, which is "affirmative egregious misconduct." *Therasense, Inc.* v. *Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011). "When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material." *Id.* (citing *Rohm & Haas Co.* v. *Crystal Chem. Co.*, 722 F.2d 1556, 1571 (Fed. Cir. 1983). As the Federal Circuit explained, "a patentee is unlikely to go to great lengths to deceive the PTO with a falsehood unless it believes that the falsehood will affect issuance of the patent." *Id.* (citing *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.*, 322 U.S. 238, 247, 64 S. Ct. 997, 88 L. Ed. 1250 (1944)). Taking Motio's claims as true, the falsely submitted chat logs, included in a declaration which both named inventors attested was true, is material. Even

11

if the chat logs were not material, Motio has sufficiently stated other instances of fraud perpetrated on the USPTO that support its claim. Thus, Motio has successfully alleged, with the particularity required by Rule 9(b), that this fraud was knowing and willful, that BSP was aware of the fraud, and that there was deceptive intent along with material reliance on the part of the USPTO.

### 2. Antitrust Injury

Motio must also allege an antitrust injury under § 2 of the Sherman Act, which prohibits monopoly and attempted monopoly. *See* 15 U.S.C.A. § 2. To state a claim for attempted monopolization, a complainant must establish that the defendant (1) engaged in predatory or anticompetitive conduct, (2) with a specific intent to monopolize, and (3) there was a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc.* v. *McQuillan*, 506 U.S. 447, 456, 113 S. Ct. 884, 122 L. Ed. 2d 247 (1993). In order to determine whether there is a dangerous probability of monopolization, courts "consider the relevant market and the defendant's ability to lessen or destroy competition in that market." *Id.* Motio must also show that it has sustained an injury that is the type of injury that antitrust laws were intended to prevent and that flows from Plaintiffs' unlawful conduct. *Atl. Richfield Co.* v. *USA Petroleum Co.*, 495 U.S. 328, 334, 110 S. Ct. 1884, 109 L. Ed. 2d 333 (1990) (citing *Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S. Ct. 690, 697, 50 L. Ed. 2d 701 (1977)); *see also Walter Kidde Portable Equip., Inc.* v. *Universal Sec. Instruments, Inc.*, 669 F. Supp. 2d 895, 899 (N.D. Ill. 2009).

Motio has already alleged anticompetitive conduct with the specific intent to monopolize: the procurement of a patent—a government sanctioned monopoly—through

the fraud. Thus, Motio need only establish that the conduct created a dangerous probability of monopoly power. Motio explains that "an industry has grown around supporting and optimizing" Cognos and that one of the markets that has emerged in that industry is the market for products that offer version control features. (Am. Compl. at 65.) According to Motio, Motio and BSP are the primary competitors in this market. (*Id.*) Motio alleges that Motio and BSP's products account for approximately 95% of the revenues in the market. (*Id.* at 66.) Motio notes that "should Motio be driven out of the version control product market . . . there is a dangerous probability that BSP will achieve monopoly power . . . ."[1] (*Id.* at 67.) These allegations are sufficient to show a dangerous probability of monopoly power.

Motio claims that it "has suffered and will continue to suffer antitrust injury . . . ." (*Id.*) Motio explains that it has "lost sales" and "incurred fees and costs in defending bad faith allegations of patent infringement," among other damages. (*Id.*) Motio also alleges that in the relevant market, BSP has raised the cost of entry "by requiring would-be entrants to incur the cost of challenging the invalid and unenforceable '589 patent," restricted competition by touting a fraudulently obtained patent, and restricted output. (*Id.* at 67–68.) Motio's allegations sufficiently state an antitrust injury. *See Netflix, Inc. v. Blockbuster, Inc.,* No. C06-02361, 2006 WL 2458717, at *7 (N.D. Cal. Aug. 22, 2006) (finding Blockbuster sufficiently alleged the antitrust injury portion of a *Walker Process*

---

[1] Motio also alleges that there is a dangerous probability that BSP and Avnet will achieve monopoly power in the "administrative tools market," which includes Motio's MotioPI and MotioPI Pro products. (Am. Compl. at 67.) But BSP accuses these products of infringing the '863 patent, not the '589 patent. (Dkt. at 1.) It is unclear why a dangerous probability of monopoly in the administrative tools market is relevant to Motio's *Walker Process* claim that the '589 patent was procured through fraud. Thus, the court considers Motio's assertion that there is a dangerous probability of monopoly in the version control market only.

claim where "[a]s a result of Netflix's purported monopolistic conduct, Blockbuster may be forced out of the market, which would cede to Netflix virtually complete control of the online-DVD market"). Thus, the court finds that Motio's *Walker Process* claim would survive a motion to dismiss and therefore is not futile.

B.      **Sham Litigation and Attempted Monopolization**

Motio's second proposed counterclaim alleges that BSP filed a sham lawsuit in an attempt to monopolize. (Am. Compl. at 68.) This counterclaim invokes the "sham litigation" exception to the Noerr-Pennington doctrine. A party who petitions the government for redress generally is immune from antitrust liability. *Eastern R.R. Presidents Conference* v. *Noerr Motor Freight*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961); *United Mine Workers of Am.* v. *Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965) ("Noerr-Pennington doctrine"). This immunity extends to parties who petition courts. *California Motor Transp. Co.* v. *Trucking Unlimited*, 404 U.S. 508, 510, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition."). The Noerr-Pennington doctrine does not apply, however, to lawsuits that are a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Noerr*, 365 U.S. at 144.

A suit is a sham when it is "both *objectively* baseless and *subjectively* motivated by a desire to impose collateral, anti-competitive injury." *Nobelpharma*, 141 F.3d at 1071 (citing *Prof'l Real Estate Investors, Inc.* v. *Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)). Although such a showing deprives a

party of immunity, it does not establish antitrust liability. The party asserting the claim must still allege a violation of the Sherman Act as well as an injury. *See id.* at 1068.

Plaintiffs argue that Motio's sham litigation claim "sounds in fraud" and thus is subject to Rule 9(b)'s heightened pleading standards. (Dkt. 273 at 17.) Plaintiffs are correct that to the extent Motio argues that the litigation is a sham *because* it is fraudulent, Motio has to meet the requirements of Rule 9(b). An element of fraud, however, does not subject an entire claim to Rule 9(b). *See In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903, 909, 914 (N.D. Ill. 2013) (evaluating a motion to dismiss a sham litigation claim under Rule 8(a)(2) but acknowledging that several of a party's assertions "face an additional pleading hurdle because they purport to allege fraud").

### 1.     **Sham Litigation**

Motio argues that BSP's suit enforcing the '589 patent is objectively baseless because the patent was procured through fraud, and thus is invalid and unenforceable. (Am. Compl. at 68.) Motio argues that the suit is subjectively baseless because BSP was aware of the fraud and thus knew the patent is invalid and unenforceable. (*Id.* at 69.) Motio claims that the present suit, therefore, was motivated by BSP's desire to push Motio "out of the version control product market and/or the administrative tools product market," rather than by a desire to enforce a valid legal right. (*Id.*) Motio describes BSP's fraudulent conduct, as well as BSP's knowledge of this conduct, at length in its proposed amended complaint. Given Motio's detailed account of facts supporting its allegation of fraud, and the court's obligation to accept those facts as true and draw all

15

reasonable inferences from those facts in Motio's favor, *see Active Disposal*, 635 F.3d at 886, Motio has sufficiently stated a claim for sham litigation.

Courts in this District and others have denied motions to dismiss under similar circumstances. *See, e.g.*, *Morton Grove Pharm., Inc.* v. *Par Pharm. Companies, Inc.*, No. 04 C 7007, 2006 WL 850873, at *11 (N.D. Ill. Mar. 28, 2006) (denying motion to dismiss where claimant established objective baselessness through assertions that the patent was knowingly procured through fraud); *Knoll Pharm. Co.* v. *TEVA Pharm. USA, Inc.*, No. 01 C 1646, 2001 WL 1001117, at *3 (N.D. Ill. Aug. 24, 2001) (finding that claimant satisfied pleading requirement by alleging that they sent letter to patentee prior to lawsuit stating that patent was invalid and alleging patentee had no reasonable belief that patent would be enforced); *In re Cardizem CD Antitrust Litig.*, 105 F.Supp.2d. 618, 643–44 (E.D. Mich. 2000) (complainant satisfied pleading requirement by alleging patent was prosecuted for the purpose of providing a basis to instigate sham patent infringement suit).

### 2. Antitrust Injury

Because a sham litigation claim deprives a patentee of immunity but does not establish liability, Motio must also allege an antitrust injury under § 2 of the Sherman Act. Here, Motio asserts attempted monopolization. Thus, Motio must allege that BSP (1) engaged in predatory or anticompetitive conduct, (2) with a specific intent to monopolize, and (3) there was a dangerous probability of achieving monopoly power. *Spectrum Sports*, 506 U.S. at 456. Motio must also allege an injury that is the type of injury that antitrust laws were intended to prevent and that flows from Plaintiffs'

unlawful conduct. *Atl. Richfield Co.*, 495 U.S. at 334 (citing *Brunswick*, 429 U.S. at 489); *see also Walter Kidde Portable Equip., Inc.*, 669 F. Supp. 2d at 899.

Motio has already alleged anticompetitive conduct with the specific intent to monopolize. Here, it is the filing of the present suit, which Motio claims was motivated by BSP's desire to push Motio "out of the version control product market and/or the administrative tools product market . . . ." (Am. Compl. at 69.) Thus, the first two elements are established. Because the court has already determined that Motio sufficiently alleged a dangerous probability of achieving monopoly power, the court will take the third element as also established.

With respect to injury, Motio claims that, in pursuing the present suit, "BSP seeks to raise the cost of doing business, drive Motio out of the marketplace, and deter customers from purchasing competitive products." (*Id.*) Motio asserts that, among other damages, it has "lost sales" and "incurred fees and costs" in defending the present litigation. (*Id.*) Motio claims the same harm to consumers that it did in its *Walker Process* claim: BSP has, in the relevant markets, raised the cost of entry "by requiring would-be entrants to incur the cost of challenging the invalid and unenforceable '589 patent," restricted competition by touting a fraudulently obtained patent, and restricted output. (*Id.* at 69–70.) Because Motio has sufficiently alleged the required elements of a sham litigation claim, this court finds that it would survive a motion to dismiss and thus is not futile.

C.     **Conspiracy in Restraint of Trade**

Motio also alleges that BSP and Avent entered into a conspiracy in restraint of trade in violation of § 1 of Sherman Act. Specifically, Motio claims that BSP and Avnet

entered into an agreement to obtain a monopoly in the two relevant marketplaces: the marketplace for products that offer version control features for Cognos and the marketplace for products that offer administrative tools for Cognos. (*Id.* at 70.)

In order to succeed on a claim of conspiracy in restraint of trade, a claimant must prove three elements: "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in [a] relevant market; and (3) an accompanying injury." *Denny's Marina, Inc.* v. *Renfro Prods., Inc.*, 8 F.3d 1217, 1220 (7th Cir. 1993).

In reviewing the sufficiency of a complaint, the court must accept all well-pleaded facts as true and draw all permissible inferences in favor of the complainant. *Active Disposal*, 635 F.3d at 886. The Federal Rules of Civil Procedure require only that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson* v. *Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting *Twombly*, 550 U.S. at 555). A claim under § 1 of the Sherman Act is not, as BSP alleges, subject to Rule 9(b)'s heightened pleading standard. *See Agnew* v. *Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012) (affirming dismissal of a § 1 claim under the Supreme Court's "notice-pleading standard").

At this stage in the litigation, Motio has sufficiently alleged a contract, combination or conspiracy, a resulting unreasonable restraint of trade in a relevant market, and an accompanying injury. Motio claims that "prior to the closing" of Avnet's purchase of BSP in November 2012, BSP represented to Avnet that if successful in the present suit, Avnet would obtain a monopoly in the marketplace for products that offer version control features for Cognos and the marketplace for products that offer

administrative tools for Cognos. (Am. Compl. at 70.) Thus, Motio claims that Avnet's acquisition of BSP "is a contract, combination, and/or conspiracy in restraint of trade . . . ." (*Id.*) As a result of Avnet's acquisition, Motio claims it has lost sales. (*Id.* at 71.) It further claims that the conspiracy between Avnet and BSP has damaged the market—restricting competition and output and raising the cost of entry. (*Id.*) Thus, Motio has alleged a contract, combination, or conspiracy, a resultant unreasonable restraint of trade in a relevant market, and an accompanying injury. The court finds that Motio's claim of conspiracy in restraint of trade would survive a motion to dismiss and therefore is not futile.

### D. Inequitable Conduct

Finally, Motio asserts that the '589 patent is unenforceable due to inequitable conduct. Inequitable conduct is not a claim, as BSP contends, but rather an equitable defense. "Patent applicants are required to prosecute patent applications with candor, good faith, and honesty." *Semiconductor Energy Lab. Co., Ltd.* v. *Samsung Elecs. Co., Ltd.*, 204 F.3d 1368, 1373 (Fed. Cir. 2000) (citing *Molins PLC* v. *Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995)). "[I]nequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Id.* (internal citation omitted). The defense of inequitable conduct is subject to the heightened pleading requirements for fraud claims under Rule 9(b). *See Ferguson Beauregard/Logic Controls* v. *Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) ("inequitable conduct, while a broader concept than fraud, must be pled with particularity"). Intent need only be averred generally. Fed. R. Civ. P. 9(b).

As discussed above, Motio has alleged, with particularity, that BSP made affirmative misrepresentations of material fact, that it failed to disclose material information, and that it submitted false material information—all with the intent to deceive the USPTO. Thus, Motio's defense of inequitable conduct is not futile.

**CONCLUSION**

For these reasons, defendant's motion to amend is granted. Should BSP file a motion to dismiss, the court directs BSP to limit its arguments to those not addressed in this opinion to allow for the soonest practicable resolution of this suit.

Date:   January 30, 2015 _____
U.S. District Judge