IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AVNET, INC. and | ) | |
| BSP SOFTWARE, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 12 C 2100 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| MOTIO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiffs Avnet, Inc. and BSP Software, LLC move to dismiss defendant Motio, Inc.'s amended counterclaims under Federal Rule of Procedure 12(b)(6). (Dkt. 310.) For the reasons stated below, plaintiffs' motion is denied.[1]

**BACKGROUND**

This case concerns two patents: Patent Nos. 7,945,589 ("the '589 patent") and 8,073,863 ("the '863 patent"). The '589 patent claims systems and methods for integrating change management in a business intelligence system; the '863 patent claims systems and methods for batch management of metadata in a business intelligence system.

On March 22, 2012, BSP Software, LLC ("BSP") filed suit against Motio, Inc. ("Motio") alleging infringement of the '589 patent and the '863 patent. (Dkt. 1.) Motio filed an answer denying these allegations and alleging five counterclaims of its own. (Dkt. 12.) The counterclaims sought a declaratory judgment that the patents are invalid or, in the alternative, were not infringed and asked the court to find the case "exceptional" under 35 U.S.C. § 285. (*Id.*

---

[1]The court has jurisdiction under 28 U.S.C. §§ 1331 and 1338. Venue is appropriate under 28 U.S.C. §§ 1391(b) and § 1400.

1

at 9–10.) Motio amended its answer in March 2013, adding two more counterclaims stating that both patents are unenforceable as a result of inequitable conduct. (Dkt. 82 at 11, 17.) Avnet, Inc. ("Avnet") acquired BSP later that year and obtained all rights to BSP's intellectual property, including the '589 and the '863 patents. (Dkt. 144; *see* dkt. 153 at 1.) BSP filed a motion to substitute Avnet as plaintiff in July 2013. (Dkt. 144.)

In January 2014, the court stayed the case in light of the parties' interest in settlement. (Dkt. 239.) When settlement talks ceased later that year, Motio moved for a new case management schedule. (Dkts. 257, 258.) Once a new scheduling order was entered, Motio moved for leave to amend. (Dkts. 260, 262, 263.) Motio sought to file three additional counterclaims, all of which alleged violations of the Sherman Act. (Dkt. 263.) It also sought to revise its previous allegation of inequitable conduct. (*Id.*) The additional counterclaims and revisions pertained only to the '589 patent. (*Id.* at 1–2.) Motio explained that the factual bases for these claims only came to light during the stay.

The court considered Motio's motion for leave to amend under Federal Rule of Civil Procedure 15(a)(2). (Dkt. 301 at 2.) Rule 15(a)(2) directs courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts may refuse to grant leave, however, if "the moving party unjustifiably delayed in presenting its motion to the court, repeatedly failed to cure deficiencies, or if the amendment would be futile." *Gandhi* v. *Sitara Capital Mgmt., LLC*, 721 F.3d 865, 868–69 (7th Cir. 2013) (citation omitted). An amendment is futile when "the new pleading would not survive a motion to dismiss." *Id.* at 869 (citation omitted). Thus, the court considered whether Motio's proposed counterclaims and affirmative defense met the standards set forth in Federal Rules of Civil Procedure 8(a) and 9(b). (Dkt. 301 at 5–6.) The court

concluded that they did. (*Id.* at 20.) Motio filed its amended answer with affirmative defenses and counterclaims shortly after. (Dkt. 304.)

In arguing that Motio's proposed amendment was futile, plaintiffs informed the court that, if the court disagreed, they wanted an opportunity to fully brief a motion to dismiss. (Dkt. 273 at 15.) But because a motion to dismiss would involve evaluating the same counterclaims under the same standard, the court directed BSP "to limit its arguments to those not addressed in this opinion to allow for the soonest practicable resolution of this suit." (Dkt. 301 at 20.)

Plaintiffs filed a motion to dismiss a month later. (Dkt. 310.) The motion asks the court to dismiss all ten counterclaims: counts I, II, III, and IV (which seek declaratory relief that the '589 patent and the '863 patent are invalid or, in the alternative, were not infringed); counts V and VI (which allege inequitable conduct as to both patents); counts VII, VIII, and IX (which allege antitrust violations as to only the '589 patent); and count X (which asks the court to declare this case exceptional under 35 U.S.C. § 285). (*Id.*) The court will address the counts alleging inequitable conduct and the counts alleging antitrust violations first—as it previously considered those counts in its opinion granting Motio's motion for leave to amend. The court will then consider plaintiffs' arguments as to the counts asking for declaratory judgments and the count asking the court to find this case exceptional.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts and draws all reasonable inferences from those facts in the complainant's favor. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011); *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002).

To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the complainant need not plead legal theories. Hatmaker v. Mem'l Med. Ctr., 619 F.3d 741, 743 (7th Cir. 2010). "Federal pleading rules call for 'a short and plain statement of the claim showing the pleader is entitled to relief' . . . . [T]hey do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson* v. *City of Shelby*, --- U.S. ---, 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014) (per curiam) (citation omitted).

Given the arguments that plaintiffs raised in their opposition to Motio's motion for leave to amend and have raised again in their motion to dismiss, it bears repeating that the purpose of a motion to dismiss is not to decide the merits of the case, but, instead to test the sufficiency of the complainant's allegations. *See Gibson* v. *City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Thus, the court takes all of Motio's factual allegations as true and draws all reasonable inferences in Motio's favor. *Killingsworth* v. *HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

## ANALYSIS

As noted above, in opposing Motio's motion for leave to amend, plaintiffs expressed a desire to file a motion to dismiss should the court allow the amendment. (Dkt. 273 at 15.) Cognizant of that desire, the court stated, "Should BSP file a motion to dismiss, the court directs BSP to limit its arguments to those not addressed in this opinion to allow for the soonest practicable resolution of this suit." (Dkt. 301 at 20.) Although some of the arguments raised in

plaintiffs' motion to dismiss were not addressed in the court's opinion, some were. As for the ones that were, Motio argues the "law of the case" doctrine applies. The court agrees.

The law of the case is a discretionary doctrine that creates a presumption against reopening matters already decided in the same litigation. *United States* v. *Harris*, 531 F.3d 507, 513 (7th Cir. 2008). The doctrine allows reconsideration only for a compelling reason such as a manifest error or a change in the law that reveals the prior ruling was erroneous. *Minch* v. *City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). This presumption reflects interests in consistency, finality, and the conservation of judicial resources, among others. *Id.* Thus, the court proceeds with this presumption in mind.[2]

## I. Antitrust Counterclaims

Motio's antitrust counterclaims concern only the '589 patent. This patent covers software to optimize IBM's Cognos Business Intelligence Software ("Cognos"). (Dkt. 304 at 17.) This software includes version control, a feature that records changes to a file over time so that a user can recall specific versions later. (*See id.*)

At the heart of Motio's antitrust counterclaims is the allegation that BSP procured the '589 patent through intentional fraud on the U.S. Patent and Trademark Office ("USPTO"). Motio claims that by filing a suit to enforce a fraudulently obtained patent, BSP attempted to

---

[2] Plaintiffs' argument that the doctrine does not apply because "the 'law of the case' doctrine only comes into play when a court has 'actually decided' an issue" is confounding. (*See* dkt. 334 at 1 (citing *PaineWebber, Inc.* v. *Farnam*, 870 F.2d 1286, 1291 (7th Cir. 1989).) That is exactly what the court did here. The standards of review for determining whether a motion for leave to amend should be denied for futility under Rule 15(a)(2) and determining whether a motion to dismiss should be granted under Rule 12(b)(6) are identical. *See City of Charleston, S.C.* v. *Hotels.com, LP*, 520 F. Supp. 2d 757, 775 (D.S.C. 2007) ("The court emphasizes that it does not invoke the law of the case doctrine as a hollow technicality. Rather, the court decided these same issues mere months ago under an identical standard of review. Since that time, Defendants have not raised, and the court is not aware of, any new material facts which would change the analysis of whether Plaintiffs' allegations meet the liberal pleading requirements of Rule 12(b)(6).").

form a monopoly in violation § 2 of the Sherman Act. Motio also claims that by acquiring BSP, Avnet and BSP entered into a conspiracy to restrain trade in violation of § 1 of the Sherman Act. Thus, Motio alleges three antitrust counterclaims: *Walker Process* fraud under § 2 of the Sherman Act, sham litigation and attempted monopolization under § 2 of the Sherman Act, and conspiracy in restraint of trade under § 1 of the Sherman Act.

Plaintiffs argue that all three antitrust counterclaims must be dismissed because Motio has not plausibly alleged market definition and market power. (Dkt. 311 at 2, 6.) They also object to Motio's three antitrust claims individually. The court will consider plaintiffs' arguments as to market definition and market power first.

### A.     Market Definition and Market Power

In its opinion granting Motio's motion for leave to amend, the court considered Motio's definition of the relevant market, which was the industry that had grown around supporting and optimizing IBM's Cognos software. (Dkt. 301 at 13.) The court accepted this definition. (*Id.*) The court then considered whether, within that market, Motio had sufficiently alleged that it had suffered an antitrust injury under § 2 of the Sherman Act, which prohibits monopoly and attempted monopoly. To state a claim for attempted monopolization, a complainant must establish that the defendant (1) engaged in predatory or anticompetitive conduct, (2) with a specific intent to monopolize, and (3) there was a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc.* v. *McQuillan*, 506 U.S. 447, 456, 113 S. Ct. 884, 122 L. Ed. 2d 247 (1993). In order to determine whether there is a dangerous probability of monopolization, courts "consider the relevant market and the defendant's ability to lessen or destroy competition in that market." *Id.* A complainant must also show that it has sustained an injury that is the type of injury that antitrust laws were intended to prevent and that flows from the alleged unlawful

conduct. *Atl. Richfield Co.* v. *USA Petroleum Co.*, 495 U.S. 328, 334, 110 S. Ct. 1884, 109 L. Ed. 2d 333 (1990) (citation omitted). The court noted that Motio had already alleged anticompetitive conduct with the specific intent to monopolize: the procurement of a patent—a government sanctioned monopoly—through fraud. (Dkt. 301 at 12–13.) Thus, Motio only needed to establish that the conduct created a dangerous probability of monopoly power. (*Id.* at 13.) The court reviewed Motio's allegations, including that Motio and BSP are the primary competitors in the relevant market, that Motio and BSP's products account for approximately 95% of the revenues in the market, and that "should Motio be driven out of the version control product market . . . there is a dangerous probability that BSP will achieve monopoly power." (*Id.* (citing Dkt. 263, Ex. I at 65–67).) The court concluded that Motio's allegations were sufficient to show a dangerous probability of monopoly power. (*Id.*) It repeated this finding when analyzing Motio's sham litigation claim, also alleging a violation of § 2 of the Sherman Act. (*Id.* at 17.) It also found, when analyzing Motio's claim of conspiracy in restraint of trade, that Motio had plausibly pleaded market power. (*Id.* at 18–19.) Thus, the court accepted Motio's market definition and concluded that Motio had sufficiently alleged market power.

Plaintiffs now contend that the court must dismiss Motio's antitrust counterclaims because Motio has not alleged any facts in support of its market definition. (Dkt. 311 at 2.) Plaintiffs maintain that Motio has not sufficiently explained why it has limited its market definition to specific products—here, products that offer version control features for IBM's Cognos software. (*Id.* at 4.) As a preliminary matter, "[b]ecause market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market." *Todd* v. *Exxon Corp.*, 275 F.3d 191, 199–200 (2d Cir. 2001) (citations omitted); *see also Int'l Equip. Trading, Ltd.* v. *AB SCIEX LLC*, No. 13 C 1129, 2013 WL

4599903, at *3 (N.D. Ill. Aug. 29, 2013) (citing *Todd*, 275 F.3d at 199–200); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 901 (N.D. Ill. 2011) (same); *DSM Desotech Inc.* v. *3D Sys. Corp.*, No. 08 CV 1531, 2009 WL 174989, at *8 (N.D. Ill. Jan. 26, 2009) (observing that "market definitions are questions of fact ordinarily determined at trial").

Although dismissal may be appropriate where "the alleged relevant market 'clearly does not encompass all interchangeable substitute products' or when a plaintiff 'fails even to attempt a plausible explanation as to why a market should be limited in a particular way,'" *Dairy Farmers*, 767 F. Supp. 2d at 901–02 (citing *Conte* v. *Newsday, Inc.*, 703 F. Supp. 2d 126, 142 (E.D.N.Y. 2010)), those facts are not present here. Motio has explained that "an industry has grown around supporting and optimizing" Cognos and that one of the markets that has emerged in that industry is the market for products that offer version control features. (Dkt. 304 at 65.) Taking this explanation as true, it is by no means clear that this market does not encompass all interchangeable substitute products. Motio's market definition may be too narrow, or it may not be, but this determination is inappropriate at this stage of the litigation. *See Eastman Kodak Co.* v. *Image Technical Servs., Inc.*, 504 U.S. 451, 482, 112 S. Ct. 2072, 2090, 119 L. Ed. 2d 265 (1992) ("The proper market definition in this case can be determined only after a factual inquiry into the 'commercial realities' faced by consumers." (citation omitted)); *Hannah's Boutique, Inc. v. Surdej*, No. 13 C 2564, 2013 WL 4553313, at *3 (N.D. Ill. Aug. 28, 2013). Thus, plaintiffs have failed to point to a compelling reason—such as a manifest error or a change in the law— that overcomes the presumption created by the law of the case doctrine. *See Minch*, 486 F.3d at 301. The court sees no reason to disturb its prior decision.

Plaintiffs also argue that Motio's antitrust counterclaims fail to plausibly allege market power. (Dkt. 311 at 6.) "Dismissal is proper where the antitrust plaintiff 'fails to identify any facts from which the court can infer that defendants had sufficient market power to have been able to create a monopoly.'" *Walter Kidde Portable Equip., Inc.* v. *Universal Sec. Instruments, Inc.*, 669 F. Supp. 2d 895, 902 (N.D. Ill. 2009) (quoting *Endsley* v. *City of Chicago*, 230 F.3d 276, 282 (7th Cir. 2000)). As stated above, the court concluded that Motio has identified facts from which the court can infer that BSP and Avnet had sufficient market power to have been able to create a monopoly. Plaintiffs do not raise any arguments that suggest the prior ruling was erroneous. *See Minch*, 486 F.3d at 301.

For example, plaintiffs object to Motio's reliance on market share. (Dkt. 311 at 6.) But plaintiffs do not cite any case requiring a claimant to allege a specific market size or percentage of market share at this stage in the litigation. *See Hannah's Boutique*, 2013 WL 4553313, at *3 (rejecting argument that claimant needed to allege the size of a market or a market share). Plaintiffs also fault Motio for not alleging facts demonstrating that there are high barriers to entry. (Dkt. 311 at 8–9 ("But Motio has not alleged—nor can it—that there is anything to stop these competitors from quickly and easily selling more software if Motio were taken out of the market and BSP tried to raise its prices.").) Plaintiffs also complain that Motio has not addressed specific products (including products offered for free), which it claims "wholly undercuts Motio's market allegations." (*Id.* at 9.) Motio, however, does not have to anticipate, respond to, and dismantle every possible counterargument in order to survive a motion to dismiss. Indeed, *Twombly* merely requires that a complainant state a plausible claim for relief; a complainant need not assert all facts sufficient to prove its case. *Twombly*, 550 U.S. at 570; *see also Morrison* v. *YTB Intern., Inc.*, 649 F.3d 533, 537 (7th Cir. 2011) ("Complaints need not do more than narrate

9

a plausible claim for relief. Plaintiffs may not be able to prove what they allege." (citation omitted)).

B. Motio's *Walker Process* Claim

Plaintiffs also argue that the court should dismiss Motio's *Walker Process* claim because Motio has failed to alleged but-for materiality. (Dkt. 311 at 10.) A *Walker Process* claim, named for the Supreme Court's decision in *Walker Process Equipment, Inc.* v. *Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S. Ct. 347, 15 L. Ed. 2d 247 (1965), is a claim that a party violated § 2 of the Sherman Act by filing suit alleging infringement of a fraudulently acquired patent. In order to succeed on a *Walker Process* claim, a litigant must demonstrate that the patentee obtained the patent by knowingly and willfully misrepresenting facts to the USPTO and that the party enforcing the patent (if different from the patentee) was aware of the fraud when bringing the suit. *Nobelpharma AB* v. *Implant Innovations, Inc.*, 141 F.3d 1059, 1068–69 (Fed. Cir. 1998). The litigant's claim must be based on "independent and clear evidence of deceptive intent together with a clear showing of reliance, *i.e.,* that the patent would not have issued but for the misrepresentation or omission." *Id.* at 1071. Finally, the litigant must meet the necessary elements of the underlying antitrust violation. *Id.* *Walker Process* claims are subject to Rule 9(b). *Medimmune, Inc.* v. *Genentech, Inc.*, 427 F.3d 958, 967 (Fed. Cir. 2005), *rev'd and remanded on other grounds*, 549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007).

In its opinion granting Motio's motion for leave to amend, the court summarized Motio's allegations of fraud. (Dkt. 301 at 8–10.) It noted that Motio claimed BSP had deliberately selected search terms in order to exclude prior art and, on at least three occasions, failed to identify as "most closely related" highly relevant products with which BSP was intimately acquainted—including Motio's product. (*Id.* at 8–9 (citing Dkt. 263, Ex. I at 16).) It further

10

noted that Motio claimed BSP intentionally withheld material references to the documentation included with Cognos software installation as well as other material references from Cognos training materials. (*Id.* at 9 (citing Dkt. 263, Ex. I at 19–21).) Motio also claimed that BSP made false and misleading statements to the USPTO, including intentionally misrepresenting the version control functionality in Motio's MotioCI product. (*Id.* (citing Dkt. 263, Ex. I at 24).) In addition, Motio alleged that BSP attempted to cover-up its knowledge of Motio's product by deleting references to Motio and Motio's product in the chat logs submitted to the USPTO. (*Id.* at 9–10 (citing Dkt. 263, Ex. I at 25).)

In opposition to Motio's motion for leave to amend, plaintiffs argued that the USPTO did not rely on the chat logs. (*See id.* at 10.) The court agreed that, based on the facts before it, it appeared the USPTO had not relied on the chat logs. The court noted, however, that the chat logs could fall within the "affirmative egregious misconduct" exception to the "but-for materiality" requirement outlined in *Therasense, Inc.* v. *Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011). (Dkt. 301 at 11.) But because the application of *Therasense* (which considers inequitable conduct claims, not *Walker Process* claims) was uncertain, and because the chat logs made up only a small part of Motio's fraud allegations, the court concluded that "[e]ven if the chat logs were not material, Motio has sufficiently stated other instances of fraud perpetrated on the USPTO that support its claim." (*Id.* at 11–12.)

Plaintiffs bring the exact same argument—that the USPTO did not rely on the chat logs— in their motion to dismiss. (Dkt. 311 at 10.) Plaintiffs also argue that the court was wrong, as a matter of law, to "graft" the "affirmative egregious misconduct" exception to the but-for materiality requirement in an inequitable conduct claim on to the but-for materiality requirement in a *Walker Process* claim. (*Id.* at 11; dkt. 334 at 9.) Although the application of this exception

is not "foreclosed by settled law," as plaintiffs argue (*see* dkt. 334 at 9), the court agrees that it is uncertain whether the exception applies to *Walker Process* claims—and recognizes that its opinion does not make this clear. This is not, however, a compelling reason to reverse the court's decision, as that decision did not depend on the application of this exception. Nor did it depend on a finding that the chat logs were material. The court ruled then, and reiterates now, that "Motio has successfully alleged, with the particularity required by Rule 9(b), that this fraud was knowing and willful, that BSP was aware of the fraud, and that there was deceptive intent along with material reliance on the part of the USPTO." (Dkt. 301 at 12.)

### C. Motio's Sham Litigation Claim

Next, plaintiffs argue that Motio's sham litigation claim should be dismissed because Motio fails to plausibly allege that the suit is both objectively and subjectively baseless. (Dkt. 311 at 12.) The court previously concluded that, "[g]iven Motio's detailed account of facts supporting its allegation of fraud, and the court's obligation to accept those facts as true and draw all reasonable inferences from those facts in Motio's favor, Motio has sufficiently stated a claim for sham litigation." (Dkt. 301 at 15–16.) Plaintiffs do not state a compelling reason, such as a manifest error or a change in the law, that warrants reversal of this conclusion. *See Minch*, 486 F.3d at 301.

Plaintiffs contend that because Motio alleges that only one of the two patents was procured by fraud, it cannot contend that the entire suit is baseless. (Dkt. 311 at 12–13.) Thus, its claim must be dismissed. Plaintiffs, however, cite to no controlling authority that would dictate this result. Their only support is from a district court refusing to declare a case baseless when the plaintiff only alleged one of the eight claims was objectively baseless, *Meridian Project Sys., Inc.* v. *Hardin Const. Co.*, LLC, 404 F. Supp. 2d 1214, 1221–22 (E.D. Cal. 2005)

and another concluding that previous determinations, allowing "claims of infringement of four of the six asserted patents to proceed beyond summary judgment, and two of the four to proceed through trial, preclude any contention that defendants' litigation is so baseless as not to warrant *Noerr-Pennington* immunity." *Twin City Bakery Workers & Welfare Fund* v. *Astra Aktiebolag*, 207 F. Supp. 2d 221, 224 (S.D.N.Y. 2002). Neither of these cases provides the court with a compelling reason to reverse its previous decision. Indeed, controlling authority actually suggests a single claim is sufficient. *MCI Commc'ns Corp.* v. *Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1154–55 (7th Cir. 1983) (observing that a Ninth Circuit case "joins a growing list of federal cases which have held that a single lawsuit or claim may constitute sham litigation" and concluding that "the bringing of baseless claims—even the undertaking of a single sham state court lawsuit—is devoid of the constitutional significance that warrants immunity from the antitrust laws").

Plaintiffs' other arguments, including that the case cannot be objectively baseless because "BSP has produced evidence that the chat logs (1) were not, in fact, doctored and (2) were not, in any event, material to the PTO's decision," miss the mark and are inappropriate in a motion to dismiss. (*See* dkt. 311 at 13.) The objectively baseless finding was not made on the chat logs alone; even if it had been, the court will not consider evidence that BSP has produced on a motion to dismiss. Nor is the court persuaded that the litigation could not be subjectively baseless because "wanting to hurt a competitor" is a "proper objective of litigation"—a bizarre contortion of the requirement it be subjectively baseless. (*See id.* at 14 (alterations omitted) (citation omitted) (internal quotation marks omitted).) Thus, the court reaffirms its prior holding.

### D. Motio's Conspiracy Claim

Finally, plaintiffs argue that Motio's conspiracy claim must fail because four of Motio's five factual allegations are immune from § 1 liability as "they represent the unilateral conduct of a single firm rather than an agreement between separate entities." (*Id.* at 14–15 (citation omitted) (internal quotation marks omitted).) Even if true, this is irrelevant; Motio needs only a single allegation of an agreement between separate entities. Plaintiffs admit that Motio has made this allegation, which is that "Avnet acquired BSP with the specific intent to monopolize the relevant markets and to drive Motio out of the marketplace." (Dkt. 304 at 71.) As the court held in its opinion granting Motio's motion for leave to amend,

> Motio claims that "prior to the closing" of Avnet's purchase of BSP in November 2012, BSP represented to Avnet that if successful in the present suit, Avnet would obtain a monopoly in the marketplace for products that offer version control features for Cognos and the marketplace for products that offer administrative tools for Cognos. Thus, Motio claims that Avnet's acquisition of BSP "is a contract, combination, and/or conspiracy in restraint of trade . . . ." As a result of Avnet's acquisition, Motio claims it has lost sales. It further claims that the conspiracy between Avnet and BSP has damaged the market—restricting competition and output and raising the cost of entry. Thus, Motio has alleged a contract, combination, or conspiracy, a resultant unreasonable restraint of trade in a relevant market, and an accompanying injury. The court finds that Motio's claim of conspiracy in restraint of trade would survive a motion to dismiss and therefore is not futile.

(Dkt. 301 at 18–19 (citations omitted).) Plaintiffs argue that Motio's allegations are "naked conclusions" that are "implausible" on their face. (Dkt. 311 at 15.) The court disagrees and finds that, again, plaintiffs have not alleged a compelling reason that warrants reversal of the court's prior ruling.

## II. Inequitable Conduct

Motio's second amended answer, filed before the stay, included two counts of inequitable conduct—one for each of the two patents-in-suit. (Dkt. 82 at 11, 17.) In its motion for leave to amend, Motio proposed adding three antitrust counterclaims, as well as revising one of the inequitable conduct counts. (Dkt. 263). These additions and revisions related only to the '589 patent. Thus, the court's prior opinion considered only the contention that the '589 patent is unenforceable due to inequitable conduct, not the contention that the '863 patent is unenforceable due to inequitable conduct. Accordingly, one count is subject to the law of the case doctrine while the other is not. The court considers the count that is not subject to the law of the case doctrine first.

"[I]nequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Id.* (internal citation omitted). The defense of inequitable conduct is subject to the heightened pleading requirements for fraud claims under Rule 9(b). *See Ferguson Beauregard/Logic Controls* v. *Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). "[P]leading inequitable conduct in patent cases . . . requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp.* v. *Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). Rule 9(b) states that "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally" and the "relevant 'conditions of mind' for inequitable conduct include: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Id.* (citation omitted).

Motio alleges that "one or more of the named inventors and their representatives . . . breached their duty of candor, good faith, and honesty owed, engaged in inequitable conduct, and engaged in affirmative egregious conduct." (Dkt. 304 at 62.) More specifically, Motio provides that they intentionally and willfully failed to disclose the "ReportCentral Product Family" and the "MyPages Product Family," despite knowledge and understanding of both, to the USPTO. (*Id.*) Motio makes the same allegation for other specific materials, documentation, and articles. (*Id.* at 62–63.) Motio then claims that these actions were intended to deceive the examiner during prosecution of the application that matured into the '863 patent. (*Id.* at 63.) Motio alleges that "[b]ut for the misconduct described above, including the multiple failures to disclose material prior art, BSP would not have procured the '863 patent" and that the "misconduct and withheld prior art is, therefore, material." (*Id.*) Motio also alleges that this conduct constitutes "affirmative egregious misconduct." (*Id.* at 63–64.)

Motio provides significantly more detail in its section on the prosecution of the '863 patent—over twenty pages' worth. (*Id.* at 34–58.) For example, Motio explains why the ReportCentral Product Family is material, comparing the product family, and its functionality, to the claims in the '863 patent.[3] (*Id.* at 36–37.) Motio also alleges who, specifically, had knowledge of the product family, and what kind of knowledge they had. (*Id.* at 37–43.) Motio offers this same information with respect to the MyPages Product Family and the other materials, documentation, and articles it alleges BSP failed to disclose. (*Id.* at 43, 45, 53, 54, 55.) This is more than enough on a motion to dismiss, even under Rule 9(b). Motio has alleged, with

---

[3] Plaintiffs object to Motio's characterization of the ReportCentral Product Family, arguing that it is inconsistent with the claim language of the '863 patent. (Dkt. 311 at 19.) These types of arguments, however, are not appropriate on a motion to dismiss where the court is bound to accept Motio's allegations as true and draw all reasonable inferences in Motio's favor.

particularity, the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *See Exergen*, 575 F.3d at 1327.

The court now turns to Motio's contention that the '589 patent is unenforceable due to inequitable conduct, which is subject to the law of the case doctrine. This count is alleged with the same degree of specificity and particularity as the other. Thus, in evaluating Motio's motion for leave to amend, the court concluded, "Motio has alleged, with sufficient particularity, that BSP made affirmative misrepresentations of material fact, that it failed to disclose material information, and that it submitted false material information—all with the intent to deceive the USPTO. Thus, Motio's defense of inequitable conduct is not futile." (Dkt. 301 at 20.) Plaintiffs fail to allege any compelling reason why this court should reverse its earlier determination of the exact same allegations under the exact same standard; instead, they simply argue that Motio has failed to plead facts showing that the alleged non-disclosed references and search terms are material. To the contrary, Motio has alleged, with sufficient particularity, that these references and search terms are material. It need not allege facts *proving* that they are. Even if Motio had not alleged with sufficient particularity that these references and search terms are material, they are not the only allegations supporting Motio's claim.

Further, the court notes that here, *Therasense*'s "affirmative egregious misconduct" exception unquestionably applies. Thus, even if Motio did not allege, with sufficient particularity, the materiality of any of the alleged instances of inequitable conduct, it could still meet the materiality requirement by alleging "affirmative egregious misconduct" with particularity.[4] *Therasense*, 649 F.3d at 1292. As the court noted in its opinion, Motio made this

---

[4] The court acknowledges that this exception does not apply to allegations of mere nondisclosure. *Therasense*, 649 F.3d at 1292–93 ("Because neither mere nondisclosure of prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious misconduct, claims of inequitable conduct that are based on such omissions require proof of but-for

showing; the court concluded that, taking all of its allegations as true, as the court is required to do on a motion to dismiss, Motio alleged that BSP engaged in affirmative egregious misconduct.

Finally, plaintiffs contend that Motio fails to sufficiently plead intent to deceive the PTO—noting that Motio must establish that plaintiffs knew of the references, knew that they were material, and made a deliberate decision not to disclose them in order to prove intent. (Dkt. 311 at 22.) Intent, however, need only be averred generally. Thus, plaintiffs have failed to allege any compelling reason why this court should reverse its earlier determination.

## III. Declaratory Judgment Counts

Plaintiffs also contend that Motio has not alleged any facts in support of its counts asking for declaratory judgments of invalidity or non-infringement. (*Id.* at 23.) It also objects to Motio's tenth counterclaim, requesting the court to find this case exceptional under 35 U.S.C. § 285, as "duplicative." (*Id.*) All five of these counts were included in Motio's original answer to the complaint, filed in April 2012. (Dkt. 12 at 9–10.) They were also included in its first amended answer, filed in March 2013, prior to the stay. (Dkt. 82 at 11, 17.) To argue now, over three years later, that they are unsupported seems disingenuous, especially when Local Patent Rules 2.2 and 2.3 direct parties to make detailed disclosures as to their theories of invalidity and infringement. *See, e.g.*, *Pfizer Inc.* v. *Apotex Inc.*, 726 F. Supp. 2d 921, 938 (N.D. Ill. 2010) (finding that dismissal of invalidity and non-infringement counterclaims for failure to satisfy Rule 8(a) would undermine the Local Patent Rules, which require parties to disclose detailed information, including the bases for their non-infringement and invalidity counterclaims). Here,

---

materiality."). Here, however, Motio alleges far more than non-disclosure. (*See dkt.* 304 at 60–61 (alleging that BSP and its representatives "selected pre-examination search terms intentionally designed to exclude relevant and material prior art," "made false and misleading sworn statements to the USPTO," and "doctored chat logs to the USPTO").)

18

the parties have already made these disclosures. Thus, the court declines to find the declaratory judgment counts invalid under Rule 8(a). Defendant's objection to count X, which asks the court to declare the case exceptional, is premature.

**CONCLUSION**

For the reasons stated above, plaintiffs' motion to dismiss is denied.

Date:   September 9, 2015                              _____
                                                      U.S. District Judge Joan H. Lefkow