UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AVNET, INC. and BSP SOFTWARE, LLC, )<br><br>Plaintiffs/Counter-Defendants, )<br><br>v. )<br><br>MOTIO, INC., )<br><br>Defendant/Counter-Plaintiff. ) | Case No. 12 C 2100<br><br>District Judge Joan H. Lefkow<br><br>Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Avnet, Inc. and BSP Software, LLC (collectively, "BSP")[1] sued defendant Motio, Inc. for infringement of U.S. patent 7,945,589 ("the '589 patent"). Motio has filed counterclaims and affirmative defenses, which include the charge that BSP engaged in inequitable conduct when the inventors of the '589 patent knowingly filed a false declaration while attempting to obtain issuance of the patent.[2] Motio has filed a motion seeking to compel plaintiffs to produce certain documents withheld on the grounds of attorney-client or work-product privilege pursuant to the crime-fraud exception (doc. # 375). In the motion, Motio argues that the forensic evidence establishes at least a *prima facie* case that the inventors fabricated a chat log in an effort to persuade the Patent and Trademark Office ("PTO") to issue the '589 patent, and that as a result, Motio is entitled to production of BSP's privileged communications that were "in furtherance of" that effort (Motio's Mot. to Compel at 1). The motion has been

---

[1]BSP Software was purchased by Avnet, Inc.

[2]On January 30, 2015, the District Judge granted Motio's motion to add counterclaims alleging Sherman Act violations and an affirmative defense of inequitable conduct over plaintiffs' objections. *See Avnet, Inc. v. Motio, Inc.*, No. 12-2100, 2015 WL 425442 (N.D. Ill. Jan. 30, 2015). Earlier this month, the District Judge denied plaintiffs' motion to dismiss Motio's counterclaims. *See Avnet, Inc. v. Motio, Inc.*, No. 12-2100, 2015 WL 5307515, at *5 (N.D. Ill. Sept. 9, 2015).

fully briefed (*see* docs. ## 376, 387, 397). For the reasons set forth below, we deny Motio's motion.

## I.

We briefly describe the evidence relevant to this motion.

On July 22, 2010, BSP filed the '589 application pursuant to the PTO's accelerated examination process (doc. # 376: Motio's Mem. in Supp. of Mot. to Compel at 2). The '589 patent technology involves an aspect of "version control" software used with existing business intelligence systems to gather and process raw data into information for business purposes (Motio's Mem. at 1). On December 15, 2010, the PTO rejected the '589 application over a prior art application filed on March 25, 2008 (*Id.* at 2). On January 5, 2011, the inventors and owners of BSP, Andrew Weiss and Andy Rachmiel (the "inventors"), participated in an interview with the PTO examiner, during which they represented that they would submit an affidavit establishing that they conceived of the '589 invention prior to the March 25, 2008 filing date of the prior art (*Id.* at 3).

On January 18, 2011, the inventors filed a declaration under 37 C.F.R. § 1.131 in an attempt to establish that they conceived of the invention before the March 25, 2008 prior art reference (doc. # 387: BSP's Resp. at 4, citing Motio's Mem., Ex. G at 14-20). As evidence of conception, the inventors attached to the declaration an undated chat log between the two of them -- which BSP now represents took place on February 14 and 20, 2008 -- that allegedly showed that they conceived of their invention prior to March 25, 2008 (Motio's Mem. at 3-4). Motio contends (with the support of a retained forensic expert) that a series of emails between the inventors from December 29 through 31, 2010 demonstrate that the declaration was false and the February 20, 2008 chat log was fabricated (*Id.* at 4, 9). BSP disputes Motio's allegations of

2

fraud and expert analysis, and has retained its own expert to rebut Motio's accusations (BSP's Resp. at 8-10).

The January 18, 2011 declaration and accompanying chat log failed to persuade the PTO. In the examiner's action in response to BSP's patent application, the examiner stated that the declaration was:

> insufficient to establish applicant's alleged actual reduction to practice of the invention in this country . . . . The evidence presented by the applicant does not sufficiently show possession of the invention <u>as claimed</u>. The chat log allegedly taking place on February 2008 merely contains a reference to the inventors' desire of 'putting version control into Cognos connection.' None of the evidence presented clearly focuses on the invention as claimed nor sufficiently details facts showing a <u>completion of the invention</u> commensurate with the extent of the invention as claimed. Accordingly, the declaration presents insufficient evidence detailing completion of the invention prior to the reference date.

(doc. # 273: BSP's Resp. to Motio's Mot. for Leave to File Am. Answer, Affirm. Defenses and Countercl., Ex. 16: PTO's Resp. to Appl., ¶ 5 (emphasis in original)). The '589 patent ultimately issued on May 17, 2011. The parties do not discuss what persuaded the PTO to issue the patent. However, what is important for our purposes is that Motio does not dispute BSP's claim that the PTO examiner did not rely on the declaration or the attached chat log in his decision to allow BSP's patent application subject to amendment.

## II.

In the motion before us, Motio contends that plaintiffs' alleged misconduct in lying to the PTO warrants application of the crime-fraud exception, and that plaintiffs should be ordered to produce all documents withheld based on the attorney-client communications or work product privilege from December 15, 2010 to May 17, 2011, when the '589 patent issued (Motio's Mot. at 1).

## A.

Questions of privilege that arise in the course of the adjudication of federal rights are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. The attorney-client privilege under federal law is "the oldest of the privileges for confidential communications known to the common law," whose purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *United States v. Zolin*, 491 U.S. 554, 562 (1989) (internal citations omitted). However, the legitimate and important purpose that is the basis for the attorney-client privilege "ceas[es] to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing." *Id.* at 562-63. Under the crime-fraud exception, the attorney-client privilege does not extend to communications between lawyer and client "in furtherance of future illegal conduct," or that are "made for the purpose of getting advice for the commission of a fraud or crime." *Id.* at 556, 562-63. Likewise, the work product privilege is forfeited if the attorney is assisting his client to commit a crime or a fraud. *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 769 (7th Cir. 2006).

In patent cases such as this one, we apply Federal Circuit law to determine the application of the crime-fraud exception. The Federal Circuit law on the crime-fraud exception was most recently set forth in *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352 (Fed. Cir. 2011), a decision authored by then-Chief Judge Randall Rader. In that case, the Federal Circuit affirmed the district court's denial of the defendant's motion to pierce the plaintiff's attorney-client privilege under the crime-fraud exception. According to *Unigene*, "[a] party must establish *Walker Process* fraud, also known as common law fraud, to successfully pierce the attorney-

4

client privilege under the crime-fraud exception." *Unigene*, 655 F.3d at 1358 (citing *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965)). The court explained that "[a] finding of common law fraud in the patent context 'must be based on independent and clear evidence of deceptive intent together with a clear showing of reliance.'" *Unigene*, 655 F.3d at 1358-59 (quoting *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000)). "Such independent and clear evidence must establish a *prima facie* case of fraud, which is 'generally held not to exist' unless the accusing party can show: '(1) a representation of material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation.'" *Unigene*, 655 F.3d at 1359 (quoting *Spalding*, 203 F.3d at 807).

BSP argues that Motio has failed to make out a *prima facie* case of several of these elements: intent to deceive, reliance and injury. With regard to the element of reliance, BSP argues that the PTO's rejection of the declaration and chat log doom any effort to show that those documents induced the PTO to issue the patent (BSP's Resp. at 12-13). Motio argues that it need not prove reliance, because BSP's actions constitute "affirmative egregious misconduct," as that term was used by the Federal Circuit in *Therasense v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (Motio's Mem. at 17-18). For the reasons we set forth below, we disagree that *Therasense* supports Motio's efforts to establish the crime-fraud exception here.

**B.**

At the threshold, we note that *Therasense* did not address the crime-fraud exception, but instead discussed the standards that apply to proving claims of inequitable conduct. *Therasense*

5

arose from a decision, after a bench trial, in which the district judge held that the patent in suit was unenforceable for inequitable conduct because the inventor failed to disclose to the PTO certain prior art. *Id.* at 1285. After a Federal Circuit panel upheld the district court's judgment, the Federal Circuit granted rehearing *en banc* out of concern for the "expansion and overuse" of the inequitable conduct doctrine. *Id.* at 1290.

In the *en banc* opinion, authored by Judge Rader three months before the *Unigene* decision, the Federal Circuit stated that to prevail on the defense of inequitable conduct, the accused infringer must prove by clear and convincing evidence that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO. *Therasense*, 649 F.3d at 1290-91. The court explained that the specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence," and the misrepresentation or omission must have been "but-for" material to patentability. *Id.* This "tighten[ed] the standards for finding both intent and materiality" to prevail on a defense of inequitable conduct. *Id.* at 1290.

That said, the Federal Circuit recognized an exception to the need to prove but-for materiality in cases of "affirmative egregious misconduct." *Id.* at 1292. To "punish" such acts, "[w]hen the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material;" *i.e.*, the materiality prong of inequitable conduct is satisfied whether or not but-for materiality is shown. *Id.* at 1292-93. Seizing on this exception, Motio argues that the *Therasense* "affirmative egregious misconduct" analysis should be imported into the crime-fraud context as a substitute for the reliance element of *Walker Process* fraud to establish the crime-fraud exception to the attorney-client privilege (Motio's Mem. at 17-18). Thus, Motio argues that it has established a *prima facie* case of *Walker*

*Process* fraud despite the undisputed fact that the PTO did not rely on the chat log and declaration in issuing the patent. We disagree.

*First*, we are wary of importing the affirmative egregious misconduct exception to the crime-fraud arena, because a lesser burden of proof is needed to present a *prima facie* case of fraud than to prove inequitable conduct. To succeed on an inequitable conduct defense, the moving party must prove materiality -- or establish that affirmative egregious misconduct occurred such that but-for materiality need not be proven -- by "clear and convincing evidence." *Therasense*, 649 F.3d at 1296. By contrast, as explained above, to successfully pierce the attorney-client privilege under the crime-fraud exception, Motio must only make a *prima facie* showing that BSP committed or intended to commit a fraud or crime and that the attorney-client communications in question were in furtherance of that crime or fraud. Unlike the clear and convincing evidence standard of proof, "making a *prima facie* showing is not a particularly heavy burden." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1329-30 (Fed. Cir. 2011) (internal quotations omitted). *See also Apotex Corp. v. Merck & Co., Inc.*, 507 F.3d 1357, 1362 (Fed. Cir. 2007) (explaining that to obtain the crime-fraud exception to the attorney-client privilege, the moving party must make a "*prima facie* showing of some foundation for the asserted fraud"). Allowing Motio to pierce the attorney-client privilege with no showing of reliance and only a *prima facie* showing of affirmative egregious misconduct would intolerably increase the risk of erroneously piercing the attorney-client privilege and work product protection because of the lesser standard of proof required at this stage.

*Second*, the long-standing, strong public policy of protecting attorney-client communications and work-product militates against extending the affirmative egregious misconduct exception to the crime-fraud context. "The attorney-client privilege is the oldest of

the privileges for confidential communications known to the common law," whose aim is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *United States v. Jicarilla Apache Nation*, 131 S.Ct. 2313, 2320 (U.S. 2011) (internal citations and quotations omitted). The Federal Circuit has explained that piercing the attorney-client privilege is an "extreme remedy," *Unigene*, 655 F.3d at 1359, that trial courts should not order without "careful consideration" due to "the fundamental values sought to be preserved by the attorney-client privilege," *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991). In fact, the Third Circuit has affirmatively concluded that "evidence of a crime or fraud, no matter how compelling, does not by itself satisfy both elements of the crime-fraud exception." *In re Chevron Corp.*, 633 F.3d 153, 167 (3d Cir. 2011). *Therasense*'s creation of an affirmative egregious misconduct exception to punish even unsuccessful efforts to mislead the PTO did not threaten any competing fundamental values.

*Third*, Chief Judge Rader did not mention *Therasense* -- or the possibility of dispensing with proof of reliance due to affirmative egregious misconduct -- in the *Unigene* crime-fraud case, though he authored that opinion only three months after *Therasense*. We find this omission a significant indication that the Federal Circuit did not intend the *Therasense* inequitable conduct discussion to apply in the crime-fraud context. In *Shelbyzyme v. Genzyme*, No. 09-768, 2013 WL 3229964, at *2 n.2 (D. Del. June 25, 2013), the court declined to apply another aspect of the *Therasense* ruling (that the specific intent to deceive be the "single most reasonable inference" able to be drawn from the evidence) to alter the standard needed to prove deceptive intent in the crime-fraud context ("independent and clear evidence of deceptive intent"). The *Shelbyzyme* court explained that it was "unconvinced" that the Federal Circuit intended to work this kind of

8

change to the law of crime-fraud, when the *Unigene* court's crime-fraud ruling did not even cite, much less discuss, *Therasense. Id. Cf. In re Method of Processing Ethanol Byproducts and Related Subsystems ('858) Patent Litig.*, Nos. 10–02181–LJM–DML, 13–00058–LJM–DML, 2014 WL 2938183, at *5 n.7 (S.D. Ind. June 30, 2014) (noting that despite not mentioning *Therasense*, the *Unigene* opinion did not necessarily mean to exclude affirmative egregious acts from application to the crime-fraud exception).[3]

For the foregoing reasons, we decline to apply the affirmative egregious misconduct analysis of *Therasense* to this crime-fraud matter. Nothing in this opinion bars Motio from attempting to use the affirmative egregious misconduct exception -- which Motio already has alleged (*see* doc. # 304: Motio's Am. Answer and Countercls., ¶¶ 262, 266-67) -- to support an inequitable conduct defense at the merits stage of this case. As the parties' submissions have amply demonstrated, the issue of whether BSP fabricated chat logs may hinge on a battle of experts. This complicated factual question is more appropriately determined by the trier of fact than on a discovery motion.[4]

---

[3]We note that no court has applied the affirmative egregious misconduct exception in the crime-fraud context (doc. # 397: Motio's Reply at 15; BSP's Resp. at 11-12). Only a few district court cases have even mentioned *Therasense* in the context of the crime-fraud exception, and they have varied significantly in their *dicta* comments about whether the affirmative egregious misconduct concept should apply in the crime-fraud context. *See Ethanol Byproducts*, 2014 WL 2938183, at *5 n.7; *Shelbyzyme*, 2013 WL 3229964, at *2 n.2. *See also Kenall Mfg. v. H.E. Williams, Inc.*, No. 09-1284, 2012 WL 4434370, at *1-3 (N.D. Ill. Sept. 24, 2012) (acknowledging *Therasense*'s statement that inequitable conduct may prove the crime-fraud exception, but noting that "[i]t may not be entirely clear" under *Unigene* how much evidence need be produced before the privilege may be pierced due to the crime-fraud exception); *King Drug Co. v. Cephalon*, No. 06-1797, 2014 WL 80563, at *3-4 (E.D. Pa. Jan. 9, 2014) (declining to decide the meaning and import of *Therasense* in the crime-fraud context).

[4]In its recent decision denying plaintiffs' motion to dismiss Motio's counterclaims, the District Judge recognized that "[a]lthough the application of this [affirmative egregious misconduct] exception is not foreclosed by settled law, . . . it is uncertain whether the exception applies to *Walker Process* claims . . ." *See Avnet, Inc.*, 2015 WL 5307515, at *5 (internal citations and quotations omitted). In that opinion, Judge Lefkow found that Motio had adequately alleged *Walker Process* fraud, as needed to establish that plaintiffs had violated Section 2 of the Sherman Act by filing suit alleging infringement of a fraudulently acquired patent. *Id.* In an earlier ruling, the court had stated that its determination that Motio had adequately alleged a *Walker Process* claim did not turn on applying the *Therasense* affirmative egregious misconduct exception, but instead turned on the proposition that "[e]ven if the chat logs were not material, Motio has sufficiently stated other instances of fraud perpetrated on the USPTO that support its claim." *Avnet*, 2015 WL 425442, at *5.

9

## C.

Now that we have determined that the *Therasense* affirmative egregious misconduct exception does not apply in the crime-fraud context, we must determine whether Motio has nevertheless established a *prima facie* case of *Walker Process* fraud regarding BSP's submission to the PTO of allegedly fabricated chat logs. BSP argues that the crime-fraud exception does not apply because "[t]here is no question that the PTO expressly did not rely on this chat log. The attempt to swear behind was unsuccessful and the rejection overcome on other grounds" (BSP's Resp. at 5).

In its reply brief, Motio argues -- for the first time -- that even if *Therasense* does not apply here and despite the PTO's issuance of BSP's patent without relying on the declaration and chat log, Motio has made the requisite *prima facie* showing (Motio's Reply at 15). Motio relies on 37 C.F.R. § 1.56, which states, in relevant part, that "no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct." 37 C.F.R. § 1.56(a). Motio argues that under this provision, the PTO "unquestionably would not have granted the '589 patent application had it known of BSP's false declaration and chat logs, since submitting such materials was a direct violation of BSP's duty of disclosure, candor and good faith" (Motio's Reply at 16).

In both the Federal Circuit and the Seventh Circuit, it is well-settled that arguments raised for the first time in the reply brief are waived. *See Feldman v. C.I.R.*, 779 F.3d 448, 460 (7th Cir. 2015); *see also Nycal Offshore Dev. Corp. v. U.S.*, 743 F.3d 837, 847 (Fed. Cir. 2014).[5] Consequently, Motio raised its Section 1.56(a) argument too late.

---

[5]While the law of the regional circuit generally applies to the procedural question of waiver, *see Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1002 (Fed. Cir. 2008), where questions of privilege raise issues unique to patent

However, even if we were to consider Motio's new theory, we do not find it persuasive.

Section 1.56 addresses the "Duty to disclose information *material to patentability* (emphasis

added)." Section (a) explains the policy reasons supporting the duty to disclose, and Section (b)

defines what information is material to patentability:

> (a) A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability. Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. . . . There is no duty to submit information which is not material to the patentability of any existing claim. The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office . . . However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct. . . .

> (b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) It refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability. . . .

37 C.F.R. § 1.56.

In this case, the PTO rejected the BSP's inventors' declarations and attached chat log, yet

ultimately granted the patent application. Thus, under Section 1.56(b)'s definition of material to

patentability, the allegedly fabricated chat log was not material to patentability. While Section

---

law, Federal Circuit law applies. *In re Target Tech. Co., LLC*, 208 Fed. App'x 825, 826 (Fed. Cir. 2006). Whether Motio has waived its argument regarding 37 C.F.R. § 1.56 appears to involve both general procedural questions and unique issues of patent law. Thus, we refer to both Federal Circuit and Seventh Circuit case law.

1.56(a) states that "no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct," this phrase cannot be read in a vacuum. We do not accept Motio's invitation to read this sentence as a free-standing basis to punish fraudulent conduct, detached from the context of the Section of which it is a part. "The meaning of the phrase turns on its context." *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, ___ U.S. ___, 132 S.Ct. 1670, 1681 (2012).

Therefore, because Motio has not established the reliance element of the *prima facie* case of fraud, we will not allow Motio to pierce the attorney-client or work-product privilege under the crime-fraud exception. We make no finding as to whether the other elements of the *Walker Process prima facie* case of fraud were established.

### III.

In addition to the factors required to show *Walker Process* fraud, a party seeking to use the crime-fraud exception to pierce the attorney-client communications privilege must show that the communications were made "in furtherance of a future crime or fraud." *Zolin*, 491 U.S. at 563. Although Motio has not met its burden of demonstrating a *prima facie* case of fraud, we note that Motio has also not met its burden of showing that the communications Motio seeks to discover between BSP and its attorneys were made in furtherance of a future crime or fraud.

Motio makes little attempt to show that communications between BSP and its patent attorney were made in furtherance of a future crime or fraud. Motio notes that the attorney-client documents it seeks were created during the time period when Messrs. Weiss and Rachmiel were allegedly "formulating [their] strategy regarding responding to the office action . . ." (Motio's Mem. at 18-19). In addition, in its reply brief, Motio contends that "there can be no doubt that

BSP's patent attorney was involved with the submission of the declaration and manufactured IM chat logs submitted to the Patent Office," as BSP's patent attorney signed the office action response to which the declaration and chat log were attached (Motio's Reply at 18). Motio argues that this demonstrates that there "is some reason to believe that the communications were intended to facilitate" the alleged fraud (*Id.*, quoting *Abbott Labs. v. Andrx Pharm., Inc.*, 241 F.R.D. 480, 488 (N.D. Ill. 2007)).

We disagree that Motio's allegations give a reason to believe that the attorney-client communications were intended to facilitate fraud. "A stronger, and more specific, showing must be made before the court will take the extraordinary step of requiring the disclosure of privileged attorney-client communications." *Ethanol Byproducts*, 2014 WL 2938183, at *5 (holding that the defendants' assertion that all attorney-client communications related to the subject matter at issue were "in furtherance" of fraud was insufficient to meet the "in furtherance" requirement); *see also Rowe Int'l v. ECast*, 241 F.R.D. 296, 303-04 (N.D. Ill. 2007) (holding that the defendants did not show that any of the privileged communications they sought were made "in furtherance" of a crime or fraud where the law firm submitted documents to the PTO in which the patent-holder may not have disclosed the true inventors).

Despite these thin allegations, Motio asks this Court to conduct an *in camera* review of the allegedly privileged documents to determine whether those communications were made in furtherance of a fraud (Motio's Mem. at 19). *In camera* review may be used to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception where the party requesting the review "present[s] evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability." *Zolin*, 491 U.S. at 574-75. "Once that showing is made, the decision whether to

engage in *in camera* review rests in the sound discretion of the district court . . . in light of the facts and circumstances of the particular case." *Id*. at 572.

As we explain above, Motio's allegations are not sufficient to support a reasonable belief that the crime-fraud exception applies or that *in camera* review may yield evidence establishing the exception's applicability. We therefore decline the request for *in camera* review. Judicial review of privileged documents, where not necessary to resolve a dispute, intrudes on the attorney-client relationship. The "examination of the evidence, even by the judge alone, in chambers" might in some cases "jeopardize the security which the privilege is meant to protect. . . . Too much judicial inquiry into the claim of privilege would force disclosure of the thing the privilege was meant to protect . . ." *Zolin*, 491 U.S. at 570-71 (quoting *United States v. Reynolds*, 345 U.S. 1 (1953)).

## CONCLUSION

For the foregoing reasons, we deny Motio's motion to pierce BSP's attorney-client and work-product privilege pursuant to the crime-fraud exception (doc. # 375). In so ruling, we express no view on the parties' conflicting expert opinions concerning the authenticity of the chat log BSP submitted to the PTO.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: September 16, 2015**