## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

AVNET, INC. and BSP SOFTWARE, )
INC., )
      Plaintiffs/Counter- )
      Defendants, )
)    No. 12 cv 2100
vs. )
)    District Judge Lefkow
MOTIO, INC., )    Magistrate Judge Schenkier
)
      Defendant/Counter- )
      Plaintiff. )

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs/Counter-Defendants Avnet, Inc. and BSP Software, Inc. (collectively, "Plaintiffs") move to strike the expert disclosure of J. Lynn Moore, who is the CEO of Defendant/Counter-Plaintiff Motio, Inc. ("Defendant") (doc. # 465: Pls.' Mot. to Strike). Plaintiffs argue that Mr. Moore, as a "retained or specially employed" expert governed by the disclosure requirements of Federal Rule of Civil Procedure 26(a)(2)(B), has improperly filed his disclosure statement under Rule 26(a)(2)(C). Plaintiffs also argue that even if Mr. Moore falls within the category of an expert for whom a Rule 26(a)(2)(B) report is required, Defendant's disclosure fails to meet even the less demanding requirements of Rule 26(a)(2)(C). Plaintiffs seek to strike Mr. Moore's disclosure, bar Mr. Moore from testifying on the topics contained in his disclosure, and preclude Defendant from using the information contained in Mr. Moore's disclosure in conjunction with any motion or hearing, or at trial. In response, Defendant argues that Mr. Moore properly falls within the category of experts for whom disclosure under Rule 26(a)(2)(C) is permitted, and that the disclosure of his opinions meets the requirements of that provision (doc. # 474: Def.'s Brief in Opp. to Pls.' Mot. to Strike ("Def.'s Br.")).

For the reasons that follow, we grant in part and deny in part Plaintiffs' motion to strike. We grant Plaintiffs' motion to strike Defendant's disclosure of Mr. Moore as a Rule 26(a)(2)(C) expert to testify on certain liability and damages matters. We grant Plaintiffs' request to bar Mr. Moore from serving an amended disclosure on any damages issues, and to bar him from offering any expert testimony at trial on any damages issues. We deny Plaintiffs' motion to bar Defendant from serving an amended disclosure and report for Mr. Moore on liability issues, and grant Defendant leave to serve a Rule 26(a)(2)(B) report for Mr. Moore with respect to liability opinions, subject to the qualifications discussed below. Finally, we award Plaintiffs' their reasonable attorneys' fees and costs incurred in connection with the motion.

## I.

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. Under this rule, "a party must disclose to the other parties the identity of any expert witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). However, the extent of the required disclosure is contingent upon the nature of the witness. Rule 26(a)(2)(B) provides that "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," then the party must provide the opposing side with a detailed written report that contains:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

2

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

Expert witnesses who do not fall within the parameters of Rule 26(a)(2)(B) are governed by Rule 26(a)(2)(C). Under Subsection (C), which was added to Rule 26(a)(2) in the amendments that became effective December 1, 2010, the expert need only disclose:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
(ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C).

The dispute presently before us centers on: (1) whether Mr. Moore is subject to the more extensive reporting requirements of Rule 26(a)(2)(B) or the lesser ones of Rule 26(a)(2)(C); and (2) whether Mr. Moore's disclosure complied with the appropriate rule. To resolve this issue, we look to caselaw that discusses the differences between the two expert witness disclosure categories, recognizing that the relatively recent addition of Rule 26(a)(2)(C) means that there is a paucity of caselaw addressing this matter.

In *Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F. 3d 1, 6 (1st Cir. 2011), the First Circuit distinguished between an expert recruited for the purpose of giving testimony (the 26(a)(2)(B) witness) and a "percipient" witness (the 26(a)(2)(C) witness), who—independent from his or her role as an expert—has firsthand knowledge of events relevant to the litigation. The former has no prior knowledge of the matters giving rise to the litigation but becomes knowledgeable because of his "enlistment" as an expert, while the latter has "ground-level involvement of the events giving rise to the litigation." *Id.* To this point, the court noted that where the expert (there, an exterminator) was "part of an ongoing sequence of events and

arrives at his causation opinion during treatment, his opinion testimony [was] not that of a retained or specially employed expert," and thus Rule 26(a)(2)(C), and not Rule 26(a)(2)(B), applied. *Id.* at 7; *see also Guarantee Trust Ins. Co., v. American Medical and Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2013) (former employee who had knowledge of the transactions at issue in the litigation and was not retained for the purpose of reviewing new material expressly for litigation was not subject to Rule 26(a)(2)(B)); *United States v. Sierra Pacific Indus.*, No. CIV S-09-2445 KJM EFB, 2011 WL 2119078, at *4 (E.D. Cal., May 26, 2011) (noting that the difference between a retained and a non-retained expert is that the non-retained expert gains information through percipient observations, while the retained expert gains information through any other manner).

Some courts have addressed this topic slightly differently by examining the expert's relationship with the litigation. In *Brainstorm Interactive, Inc. v. School Specialty, Inc.*, 14-cv-50-wmc, 2014 WL 5817327, at *3 (W.D. Wisc., Nov. 10, 2014), the court noted that "the application of Rule 26(a)(2)(B) depends on the expert's relationship to the issues in the lawsuit and whether his or her relationship developed prior to the commencement of the lawsuit." *See also Beane v. Utility Trailer Mgs. Co.*, No. 2:10 CV 781, 2013 WL 1344763, at *4 (W. D. La., Feb. 25, 2013) (finding experts to be witnesses subject to Rule 26(a)(2)(B) in the absence of evidence that the experts had any firsthand knowledge of the issues they sought to testify to at trial); *Skyward Bound Ranch v. City of San Antonio*, No. SA–10–CV–0316–XR, 2011 WL 2162719 at *2 (W.D. Tex., June 1, 2011) (finding that expert had no "first-hand factual knowledge of [the] case so as to escape the requirement that he submit a full expert report").

Yet other courts have focused on the meaning of the words "retained" and "specially employed" in determining whether a proffered expert is required to file the more stringent

4

report under Rule 26(a)(2)(B). In *Tolan v. Cotton*, No. H-09-1324, 2015 WL 5332171 (S.D. Tex., Sept. 14, 2015), the court concluded that a witness is "retained" if he was hired to provide expert opinion and testimony in exchange for a fee, while a witness is "specially employed" if he has no personal involvement in the facts giving rise to a case but is used by a party to provide opinions and testimony bearing on the particulars of a case, without monetary payment for those services. In arriving at this conclusion, the court noted that the word "employ" can be defined to include the payment for services, but also can be defined to mean "make use of" or "devote" to (as in time and energy). *Id.* at *6. Accordingly, under *Tolan*, a party who uses an expert witness who meets either definition must serve a Rule 26(a)(2)(B) report. *Id.* at *7.

In *D.G. v. Henry*, No. 08-CV-74-GKF-FHM, 2011 WL 2746180, at *1 (N.D. Okl., July 13, 2011), the court examined whether a Rule 26(a)(2)(B) report was required from an employee of a party who was "assigned to perform work or analysis outside the normal scope of the witness's employment in order to provide expert testimony in the case." The court noted:

> When an employee is not performing his or her usual employment functions but has been assigned the job of an expert witness in the case, the term "specially employed" is an accurate description of the employee's role. Under such circumstances the employee functions exactly like a non-employee expert witness. There is no reason to exempt such a witness from the requirement of an expert report. This construction does not require an expert report from every employee of a party who offers expert testimony, only those who are specially tasked to perform an expert function outside the usual employment role.

*Id.*

## II.

The parties in this case discuss many of the cases noted above in their respective efforts to show that Mr. Moore falls within the parameters of Subsection (B) (in the case of Plaintiffs) or Subsection (C) (in the case of Defendant) of Rule 26(a)(2). Plaintiffs maintain that Mr. Moore is a "specially employed" expert subject to the reporting requirements of Rule

26(a)(2)(B) (Pls.' Mot. at 6). Plaintiffs further argue that Mr. Moore "is not intending to offer testimony based on any specialized knowledge intrinsic to his employment as the CEO of Motio. . . [to] the contrary, Motio's disclosure suggests that Mr. Moore would offer expert testimony based on knowledge necessarily gained in anticipation of this litigation on the patents-in-suit, invalidity, infringement, and damages" (*Id.*). Plaintiffs point out that Mr. Moore testified at his deposition that he has never reviewed the entire '589 patent that is at issue in this suit, and that he is not familiar with certain prior art identified in Motio's Final Invalidity contentions (*Id.*). Plaintiffs also contend that in his disclosure statement, Mr. Moore states that he was diverted away from obtaining new business as a consequence of his involvement with this litigation—a comment that bolsters Plaintiffs' argument that Mr. Moore's expert opinions were generated in defense of this lawsuit and not in the usual course of his employment (*Id.*).

Defendant counters by arguing that Mr. Moore is not a "retained" or "specially employed" expert because (a) his job is not regularly to provide expert testimony, and (b) Defendant did not specifically "employ" him to provide expert testimony in this case (Def.'s Br. at 1). Defendant states that Mr. Moore is a software engineer who has been the CEO of Motio since he co-founded it in 1999; that he is Motio's head of sales; and that he is simply a fact witness who, by virtue of his education and experience, also has expert opinions (*Id.* at 2-3). Defendant asserts that Mr. Moore is not an expert lacking prior knowledge of the facts giving rise to this litigation and who was recruited only to give expert opinion testimony (*Id.* at 3). Rather, Defendant argues he is a percipient witness with prior knowledge of the facts who is testifying based on his personal knowledge as to the facts and data at issue in the litigation (*Id.*). Accordingly, Defendant asserts that Mr. Moore is subject only to the reporting requirements of Rule 26(a)(2)(C).

Defendant bears the burden of showing that Mr. Moore is exempt from submitting an expert report. *See Skyeward*, 2011 WL 2162719 at *2 ("Courts require a party seeking to avoid producing a full expert report to show the proposed expert is not required to submit a report"); *Meredith v. Int'l Marine Underwriters,* No. JKB–10–837, 2011 WL 1466436, at *4 (D. Md., Apr.18, 2011) ("A party seeking to avoid producing an expert report bears the burden of demonstrating that the witness is a hybrid"); *Morris v. Wells Fargo Bank,* No. 09–CV–02160–CMA–KMT, 2010 WL 2501078, at *3 (D. Colo., June 17, 2010) (requiring the party offering the expert to set forth some evidence about why the expert is exempt from submitting an expert report because that party is more likely to possess the information necessary to establish the status of the witness). Defendant has not met this burden, and thus has failed to convince this Court why Mr. Moore should be exempt from serving a Rule 26(a)(2)(B) report.

In reaching that conclusion, we begin with the observation that the purpose of the discovery rules is to facilitate the development of the facts underlying a given dispute so that justice may be done on the merits. *See Hickman v. Taylor,* 329 U.S. 495, 500–01, 507 (1947). Rule 26 reports are designed to further that purpose by providing full disclosure of the information needed to eliminate unfair surprise. *See Sherrod v. Lingle,* 223 F.3d 605, 613 (7th Cir. 2000) (finding that "[t]he expert witness discovery rules are designed to aid the court in its fact-finding mission by allowing both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case"); *see also* Fed. R. Civ. P. 26(a)(2) advisory committee's note (stating that expert disclosure rule intended to give opposing parties "reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses"). Indeed, Rule 26(a)(2)(B) expert disclosures are required to be so fulsome that they can allow an opposing party to forego expert

7

depositions, since opposing counsel would be fully apprised of the expert's opinions and the bases for them. *See* Fed. R. Civ. P. 26(b)(4)(A) advisory committee's note (1993) ("The requirement under subdivision (a)(2)(B) of a complete and detailed report of the expected testimony of certain forensic experts may, moreover, eliminate the need for some such depositions or at least reduce the length of the depositions").

In the context of a "retained or specially employed" expert, the information that must be provided in a Rule 26(a)(2)(B) report is extensive. The addition of Rule 26(a)(2)(C) represents the recognition, through experience, that a Rule 26(a)(2)(B) report was more than what was needed for experts who were expressing opinions not because they were "retained or specially employed" to do so, but because they had relevant knowledge as percipient witnesses. A party using an expert who falls within this latter category need not disclose much of the detailed information required by Rule 26(a)(2)(B), but still must reveal the facts and opinions to which the expert will testify.

In this case, Defendant has failed to show that Mr. Moore falls within the category of a Rule 26(a)(2)(C) expert. Defendant offers Mr. Moore as an expert as to more than 110 pages of non-infringement and invalidity contentions that Defendant has staked out, without offering any meaningful explanation to show that these are matters Mr. Moore would know about as a result of his normal role as CEO of Motio. To the contrary, Defendant asserts that Mr. Moore's work on this case has diverted him from other, revenue-generating activities that he normally would perform. *See D.G. v. Henry*, 2011 WL 2746180 at *1 ("[w]hen an employee is not performing his or her usual employment functions but has been assigned the job of an expert witness in the case, the term 'specially employed' is an accurate description of the employee's role").

We find unavailing Defendant's argument that Mr. Moore is merely "a fact witness in this case who, by virtue of his educational experience, also happens to have expert opinions" (Def.'s Br. at 2-3). This argument conflates whether Mr. Moore may have the qualifications to offer expert testimony, and whether he developed the disclosed opinions in the ordinary course of his work at Motio or instead for this litigation. We express no view as to Mr. Moore's qualifications as an expert within the meaning of Federal Rule of Evidence 702, as Plaintiffs' motion is based on a lack of compliance with Rule 26(a)(2)(B). But as to the manner in which Mr. Moore developed his opinions, Defendant has offered nothing to indicate that Mr. Moore derived his opinions for any purpose other than this lawsuit—unlike, for example, a treating physician who is a percipient witness, who calls on his expertise to diagnose and treat a person injured in an accident, and who then later offers that expert testimony in the resulting lawsuit.

We also reject Defendant's argument that Mr. Moore was not "specially employed" to offer expert testimony. We do not read this phrase to mean "hired," in the sense of a retained expert who has no ongoing relationship with a party but is paid for his or her services in a particular case. Such an interpretation would render the phrase "specially employed" superfluous to the immediately preceding word "retained," and we will not interpret statutory language in a way that renders it superfluous. *Corley v. U.S.*, 556 U.S. 303, 129 S. Ct. 1558, 1561 (2009) (stating that "[a] statute should be construed [to give effect] to all its provisions, so that no part will be inoperative or superfluous, void or insignificant") (internal quotations and citations omitted). Instead, we agree with the *Tolan* court that a more natural reading of "specially employed" is that of a person who is not a percipient witness but who is being specially "used" to offer expert testimony.

## III.

The foregoing analysis explains our conclusion that Mr. Moore is an expert for whom a Rule 26(a)(2)(B) expert report was required. The report Defendant served fell far short of providing the information required by that rule. That said, we take a moment to point out that the provided report does not even contain what Rule 26(a)(2)(C) requires.

Defendant states that Mr. Moore *may* offer expert testimony on: (1) the patents-in-suit and the products at issue in the lawsuit, including the operation of Motio's MotioCI and MotioPI products; (2) the invalidity of the patents-in-suit; (3) Motio's non-infringement of the patents-in suit; and (4) damages and lost revenue (Pls.' Mot., Ex. A). In only one instance does Mr. Moore indicate that he *will* testify as to a particular topic (the invalidity of Patent No. 8,073,863), while the rest of his possible testimonial topics are all qualified. Additionally, Defendant offers no information about the topics on which Mr. Moore "may" testify other than by incorporating other documents by reference (Motio's 26-page Final Unenforceability and Invalidity Contentions and 93-page Final Non-Infringement Contentions), without specifying which portions of these 119 pages are applicable. This report does not provide the level of information that, as Rule 26(a)(2)(B) contemplates, could render a deposition of an expert unnecessary. Rather, the report is the "sketchy and vague" kind of disclosure Rule 26 is designed to prevent. *See Dyson*, 241 F.R.D. at 250 (finding that where plaintiff designated one of its employees as an expert and submitted an expert report on his behalf but then refused to allow defendant access to all the information the expert used to formulate his opinions, plaintiff undermined the purpose of Rule 26, which exists to avoid expert disclosure that is "sketchy and vague," and so that litigants can be prepared for trial). *See also Motio, Inc. v. BSP Software LLC*, Case No. 4:12-CV-647, 2016 WL 74425, *2 (E.D. Tex., Jan. 6, 2016) (holding that Motio

"failed to comply with the requirements of Rule 26(a)(2)(C)" with a disclosure for Mr. Moore that, as the one here, "merely lists a set of topics that Mr. Moore may speak toward, but offers no actual facts or opinions, forcing Defendants to make assumptions on things outside the disclosure as to what Mr. Moore will testify").

## IV.

For the foregoing reasons, we agree with Plaintiffs that Defendant's disclosure is insufficient to allow Mr. Moore to go forward with expert testimony. The remaining question is whether we bar Mr. Moore from serving as an expert, as Plaintiffs request, or instead allow Defendant an opportunity to amend the report to provide the information Rule 26(a)(2)(B) requires.

Plaintiffs argue that exclusion of Mr. Moore's expert opinions is "automatic and mandatory" under Federal Rule of Civil Procedure 37 because Defendant's failure to provide a disclosure that complied with either Rule 26(a)(2)(B) or (C) was neither substantially justified nor harmless (Pls.' Reply at 12-13). We agree with Plaintiffs with respect to the disclosure of Mr. Moore as an expert witness on damages, but not as to his disclosure as an expert witness on liability.

## A.

With respect to the disclosure as to liability, we find that Defendant's failure to make a proper disclosure of Mr. Moore's expert opinions was not substantially justified. In light of the case law we have discussed above, we do not see any sound basis for Defendant to have concluded that Mr. Moore qualified as a Rule 26(a)(2)(C) witness or, even if he did, that the disclosure was sufficient to satisfy the requirements of that rule.

We also note that Defendant certainly knew that its disclosure of Mr. Moore would be challenged. By December 16, 2015, when Defendant served that disclosure in this case, Plaintiffs had challenged a similar disclosure that Defendant made for Mr. Moore in patent litigation pending between the parties in the Eastern District of Texas. Indeed, on the day Plaintiffs filed their motion to strike, that court held that Defendant's disclosure for Mr. Moore did not satisfy Rule 26(a)(2)(C). *Motio*, 2016 WL 74425 at *2. In this case, rather than seek leave to amend the report at that time, Defendant persisted in defending both its categorization of Mr. Moore as a Rule 26(a)(2)(C) expert and the adequacy of his disclosure under that rule.

Defendant's decision to stand on that earlier disclosure not only was without substantial justification, but it also is relevant to whether Defendant's failure to comply with Rule 26(a)(2) was harmless. Plaintiffs filed their motion to strike the disclosure of Mr. Moore on January 6, 2016. The deadline for serving rebuttal reports was February 10, 2015, and the deadline for completing expert discovery was March 2, 2016 (doc. # 462: Amended Scheduling Order). Had Defendant promptly sought to amend the report when Plaintiffs filed the motion, serving an amended report might not have disrupted that expert discovery schedule.

That is no longer the case. Allowing an amended report setting forth Mr. Moore's liability opinions not only would come after the close of expert discovery and would require new dates to be set for the amended disclosure, but also would require new dates to be set for Plaintiffs to serve a rebuttal report and for the depositions of Mr. Moore (as an expert) and any expert Plaintiffs may offer to rebut him. That also would have the potential to disrupt other dates in this case: there is a March 23, 2016 deadline for filing summary judgment motions, a July 25, 2016 deadline for filing the final pretrial order, and a trial date of August 22, 2016 (doc. # 462). During a hearing on February 25, 2016, defense counsel acknowledged that service of

an amended report and completion of attendant follow-on expert discovery could not be completed prior to the deadline for filing summary judgment motions; and, slippage of that deadline could place in jeopardy the trial date. Actions that would further delay the resolution on the merits of this nearly four-year-old case cannot be dismissed as harmless.

However, at the February 25, 2016 hearing, the parties sparred about whether any expert liability opinions Mr. Moore might offer would be significant to the anticipated summary judgment motions. In order to resolve any doubt about the question, the Court asked Defendant to declare by February 29, 2016 whether it would forego the use of any opinions by Mr. Moore as a basis to oppose summary judgment (while reserving the right to use any such opinions if the case goes to trial and without waiving the right to use any non-expert fact testimony by Mr. Moore on summary judgment). Defendant timely filed a disclosure forswearing any use on summary judgment of any opinions Mr. Moore might offer in an amended report (doc. # 486: Notice Pursuant to Court Order of February 25, 2016 by Motio, Inc.).

In our judgment, that commitment tips the balance on the question of whether Defendant's failure to properly disclosure Mr. Moore's liability opinions in a timely fashion causes any merits prejudice to Plaintiffs. Defendant's agreement takes that concern out of the equation, by ensuring that an amended disclosure would not blindside Plaintiffs on summary judgment or delay the trial of the case. The commentary to Rule 37(c) explains that even if a failure to disclose "was not substantially justified, a party should be allowed to use the material that was not disclosed if the lack of earlier notice was harmless." Advisory Committee Notes to 2000 Amendments. To the extent that an amended disclosure would result in Plaintiffs deposing Mr. Moore on the opinions in his amended disclosure or having their expert(s) prepare a response, that is work that Plaintiffs would have done if a disclosure had been timely and fully

13

made by the December 16, 2015 deadline. And, the amendment of the report and the follow-on discovery can be accomplished well before the dates set for the filing of the final pretrial order and trial.

That does leave one residual element of prejudice: the financial prejudice resulting from Plaintiffs expending resources to file and brief the motion to strike. However, Rule 37(c)(1)(A) provides us with a tool to redress that prejudice: an award to Plaintiffs of their attorneys' fees and costs for the briefing on the motion to strike. As part of our ruling today, we award to Plaintiffs those attorneys' fees and costs.

### B.

On the question of damages on its anti-trust counterclaim, we reach a different conclusion with respect to whether Defendant may serve an amended report. Defendant seeks to have Mr. Moore testify that "Motio has lost sales as a direct result of Mr. Moore being diverted away from obtaining business for Motio due to his involvement defending the above-captioned litigation rather than selling MotioCI products and services," which he opines resulted in damages of $1,900,000 per year (Pls.' Mot., Exh. A, at 2). Mr. Moore's disclosure also states that he may testify that Mr. Lance Hankins, the co-founder of Motio (back when it was known by its original name, Focus Technologies), similarly was directed away from his normal role at Motio, causing additional lost profits in an amount between $200,000 and $250,000 (*Id.*). Plaintiffs seek to bar any amended report, and to preclude this testimony, on the ground that Defendant failed to disclose in its initial disclosure or discovery responses a theory of damage based on this lawsuit diverting the energy of Messrs. Moore and Hankins, or any facts to support such a theory (Pls.' Reply at 8).

We agree that Mr. Moore may not offer any expert testimony regarding damages stemming from lost sales allegedly resulting from Mr. Moore and Mr. Hankins having to spend time dealing with the instant litigation. As an initial point, Defendant does not address in its response brief any of Plaintiffs' allegations concerning Defendant's failure to disclose in its initial disclosure or discovery responses information related to this damages theory. Defendant attempts to side-step this point, and to focus exclusively on all the reasons for why Mr. Moore is qualified to opine on this theory of damages (Def.'s Br. at 9-12).

Again, the question here is not Mr. Moore's qualification; instead, it is whether Defendant disclosed the damages theory Mr. Moore now seeks to advance, or the information underlying it, during discovery. The answer is no.

Avnet's Interrogatory No. 25 calls for disclosure of facts supporting Defendant's claim of having suffered an anti-trust injury, and Avnet's Interrogatory No. 26 calls for facts supporting Defendant's claim for damages (Pl.'s Mot., Exh. F). Defendant's Second Supplemental Answer to Interrogatory No. 25 states that Defendant "lost sales to additional potential customers . . . due to the customers' concerns about Avent's patent infringement litigation" (*Id.* at 12). Defendant's Second Supplemental Answer to Interrogatory No. 26 states that Defendant's total company revenue fell, growth rates of Defendant's flagship product (MotioCI) fell, and it lost opportunities to be sold/acquired (*Id.* at 13). Neither of these responses suggests lost profits due to diverted attention of Messrs. Moore or Hankins, or facts to support such a theory. As Defendant well knew, it was not entitled to wait until after the close of fact discovery to produce this kind of information. On June 2, 2015, the Court instructed Defendant that it was "not entitled to wait until the expert report and then have the expert say,

here is all the stuff that I considered, without having disclosed that stuff before the expert [report]" (*Id.*, Exh. I, 6/2/15 Tr. of Proc., 22:25-23:3 ).

Allowing Defendant to amend Mr. Moore's expert report as to damages would require Defendant to produce underlying data and information that was previously sought but not produced, and would require the reopening of discovery to allow Plaintiffs to vet the information they should have received during fact discovery, which closed on December 11, 2015 (doc. # 462). We see no good reason to allow Defendant now to produce the information it was required to provide during fact discovery.

## **CONCLUSION**

For the foregoing reasons, we grant in part and deny in part Plaintiffs' motion to strike (doc. # 465). We grant the motion to strike Defendant's December 16, 2015 disclosure of Mr. Moore as a Rule 26(a)(2)(C) expert to testify on liability and damages matters. We grant Plaintiffs' request to bar Mr. Moore from serving an amended disclosure on any damages issues, and to bar him from offering any expert testimony at trial on any damages issues.

We deny the motion insofar as it seeks to bar Defendant from serving an amended disclosure and report for Mr. Moore on liability issues. We grant Defendant leave to serve a Rule 26(a)(2)(B) report for Mr. Moore with respect to liability opinions by March 18, 2016. We place Defendant on notice that any such report must fully comply with all of the requirements of Rule 26(a)(2)(B). If Defendant serves such a report, Plaintiffs shall depose Mr. Moore on those opinions and serve any rebuttal expert report by May 2, 2016. Defendant shall complete the deposition of any rebuttal expert by May 27, 2016. As part of our decision to permit Defendant to serve an amended report, we bar Defendant from using any liability expert opinions in connection with any summary judgment motions that may be filed by Plaintiffs or

by Defendant; this will not bar Defendant from offering non-expert fact testimony from Mr. Moore on summary judgment.[1]

Finally, we award Plaintiffs their reasonable attorneys' fees and costs incurred in filing and briefing the motion to strike. By March 18, 2016, Plaintiffs shall inform Defendant of the reasonable attorneys' fees and costs they seek.

ENTER:

_____
SIDNEY I. SCHENKIER
United States Magistrate Judge

**Dated: March 4, 2016**

---

[1] Plaintiffs argue that any non-expert testimony Mr. Moore offers must be limited to whatever he said in his fact deposition, and that Defendant should be barred from offering any affidavit on summary judgment that may attest to other facts (doc. # 487: Pls.' Resp. to Def.'s Notice at 2). We disagree. We cannot vouch for whether Mr. Moore was questioned on every factual matter that may bear on the summary judgment motions that may be filed. Therefore, we will not limit Defendant to using on summary judgment an affidavit from Mr. Moore concerning a matter not touched on in his deposition, if that matter is relevant – and if it does not contradict his deposition testimony. *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1055 (7th Cir. 2000) (stating that, "[a]s a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony"); *Bruckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996) (affirming district court ruling excluding an affidavit that attempted to add evidence into the record that contradicted prior sworn deposition testimony).