UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AVNET, INC. and BSP SOFTWARE, LLC, | )<br>)<br>) |
| Plaintiffs/Counter-Defendants, | )<br>) |
| v. | )<br>) |
| MOTIO, INC., | )<br>)<br>) |
| Defendant/Counter-Plaintiff. | ) |

Case No. 12 C 2100

District Judge Joan H. Lefkow

Magistrate Judge Sidney I. Schenkier

### MEMORANDUM OPINION AND ORDER

Plaintiffs/Counter-Defendants Avnet, Inc. and BSP Software, LLC (collectively, plaintiffs) have sued defendant Motio, Inc. for infringement of U.S. Patent No. 7,945,589 ("the '589 patent") and U.S Patent No. 8,073,863 ("the '863 patent"), and Motio has filed counterclaims and affirmative defenses including non-infringement, invalidity, unenforceability and fraud (doc. # 153: Am. Compl; doc. # 304: Am. Ans., Aff. Defenses, and Countercls.). In January 2016, plaintiffs filed a motion to strike the Federal Rule of Civil Procedure 26(a)(2)(C) expert disclosure of J. Lynn Moore, Motio's CEO (doc. # 465). This Court granted the motion to strike but gave Motio leave to serve a Rule 26(a)(2)(B) expert report for Mr. Moore with respect to liability, and an opportunity for plaintiffs to depose Mr. Moore and serve rebuttal reports (doc. # 490: 3/4/16 Mem. Op. and Order, at 16).

Motio proceeded to serve plaintiffs with four expert reports by Mr. Moore, regarding: (1) noninfringement of the '863 patent; (2) invalidity of the '863 patent; (3) noninfringement of the '589 patent; and (4) invalidity of the '589 patent (doc. # 512: Pls.' Mot. to Strike Expert Reports, Exs. 1-4). Rather than depose Mr. Moore or file rebuttal reports, plaintiffs have filed a motion to strike the four expert reports -- and bar any expert testimony from Mr. Moore -- on the grounds

that: (1) the reports address the same subject matter as Motio's other technical expert, Peter Martin; (2) Mr. Moore's invalidity reports introduce arguments, theories and prior art not previously disclosed in Motio's Local Patent Rule ("L.P.R.") 3.1 contentions; and (3) Mr. Moore's reports all attempt to improperly incorporate by reference the entirety of Motio's L.P.R. 3.1 disclosures.[1]

Plaintiffs' motion to strike has now been fully briefed (*see* docs. ## 512, 540, 549). For the reasons set forth below, we grant in part and deny in part plaintiffs' motion.

**I.**

We first address plaintiffs' contention that this Court should exercise its broad discretion in managing discovery to strike Mr. Moore's expert reports because they are cumulative and duplicative of the expert reports written by Motio's other expert, Mr. Martin (Pls.' Mot. at 4). We follow other cases in this district and decline to exercise our discretion to strike Mr. Moore's expert reports on this basis.

Courts in this district have consistently held that the "prohibition against multiple experts on the same subject matter is not a rule pertaining to the discovery or motion practice stages of the case. Rather, it is a rule governing the trial stage of the case." *Sunstar, Inc. v. Alberto-Culver Co.*, No. 01 C 0736, 2004 WL 1899927, at *24 (N.D. Ill. Aug. 23, 2004). Indeed, this Court has held that the cumulative nature of an expert report would not alone warrant striking portions of the report because "[w]hile it is generally the practice in this district to prohibit a party from offering multiple experts to express the same opinions on a subject, there is no general practice or rule that prohibits a party from identifying under Fed. R. Civ. P. 26(a)(2) more than one

---

[1] In the proceedings before the district judge, summary judgment briefing was completed on June 3, 2016, and *Daubert* briefing is scheduled to be completed by July 29, 2016 (doc. # 548). However, to the extent that any of Mr. Moore's reports survives the motion to strike, any *Daubert* motions related to these reports will proceed on a schedule to be set later (doc. # 537). In addition, the trial of this matter, previously set for August 22, 2016, is now set for February 6, 2017 (*Id.*).

2

testifying expert on a subject and reserving for later the decision as to which one to use at trial." *Commonwealth Ins. Co. v. Stone Container Corp.*, No. 99 C 8471, 2002 WL 385559, at *6 (N.D. Ill. Mar. 12, 2002). *See also Cage v. City of Chicago*, No. 09 C 3078, 2012 WL 5557410, at *3 (N.D. Ill. Nov. 14, 2012) (denying motion to strike expert disclosures as cumulative because expert witnesses who express "needlessly cumulative" opinions "are generally excluded pursuant to Federal Rule of Evidence 403—a rule that does not pertain to the discovery or motion practice stage of the case, but rather the trial stage of the case") (internal quotations omitted); *Stanfield v. Dart*, No. 10 C 6569, 2013 WL 589222, at *4 n.3 (N.D. Ill. Feb. 14, 2013) (same); *Noffsinger v. The Valspar Corp.*, No. 09 C 916, 2011 WL 9795, at *7 (N.D. Ill. Jan. 3, 2011) (declining to rule on whether expert's opinion was needlessly cumulative because "[w]hether evidence is unnecessarily cumulative is an issue for trial and within the prerogative of the trial judge").

Indeed, we have found no case in this district where a court has struck an expert disclosure as duplicative at the discovery stage. The only case plaintiffs cite in which a judge has struck a duplicative expert disclosure at the discovery stage is an unpublished case from the District of Utah: *Whatcott v. City of Provo*, No. 2:01-cv-0490 DB, 2003 U.S. Dist. LEXIS 28287, at *5-6 (D. Utah May 30, 2003). This unpublished District of Utah case -- issued before many of the Northern District of Illinois opinions cited above -- does not provide a persuasive reason not to adhere to the consistent practice of courts in this district of reserving for trial the issue of whether an expert's opinion is needlessly cumulative.

We have considered plaintiffs' arguments in support of departing from this approach, but find them unpersuasive. *First*, to the extent that Mr. Moore's opinions merely "regurgitate" those of Mr. Martin (Pls.' Reply at 3), that would be a basis to argue that the testimony will be cumulative and that only one -- but not both -- of them should be allowed to testify at trial. We

3

do not view it as a reason, at this time, for defendant to be compelled to choose which expert will testify.

*Second*, plaintiffs argue that they would be prejudiced if Motio is allowed to serve Mr. Moore's reports after Mr. Martin's report was served and after Mr. Martin was deposed, as it would allow defendant "to 'fix' Mr. Martin's opinions by now running them through a, presumably better prepared, expert" (Pls.' Reply at 4). We already have signaled that we do not find that argument compelling, by ruling on March 4, 2016, that Motio could serve these reports. Moreover, plaintiffs' argument is undermined by their contradictory contention – discussed above -- that Mr. Moore's reports merely regurgitate (and thus would not "fix") Mr. Martin's report.

*Third*, plaintiffs argue that we should bar the reports because they would lead to cumulative discovery on matters already explored through Mr. Martin's expert report and depositions (Pls.' Reply at 4). However, this kind of argument could be made any time a party discloses more than one expert on a subject and, therefore, is nothing more than a repackaged contention that we should abandon the usual course in this district of allowing disclosure of multiple experts during discovery and reserving for trial which expert(s) will testify. On this point, we note that the form of pretrial order set forth in our Local Rules (Form L.R. 16.1.4 n.7) provides that "[o]nly one F.R. Evid. 702 witness on each subject for each party will be permitted to testify *absent good cause shown*. If more than one F.R. Evid. 702 witness is listed, the subject matter of each expert's testimony shall be specified" (emphasis added). Thus, the Local Rule contemplates that the final pretrial order might list multiple experts on a subject, and that there might be situations where there is good cause to allow more than one expert for a party to testify

4

on a subject. Denying a party the right to disclose more than one expert on a subject during discovery would render that provision in the pretrial order form a nullity.

*Fourth*, plaintiffs complain that Motio has not provided a compelling reason for the possibility of using Mr. Moore as an expert rather than Mr. Martin (Pls.' Reply at 4). However, plaintiffs have not demonstrated that defendant has any obligation to do so at this time. If both Mr. Martin and Mr. Moore survive *Daubert* challenges, then Motio either will have to choose which one to call at trial or will have to make the case to the trial judge that there is good cause to allow both of them testify. Motio does not bear that burden at this time.

Finally, plaintiffs appeal to the mandate in Rule 1 of the Federal Rules of Civil Procedure to administer the rules in a way that secures a "just, speedy, and inexpensive determination" of cases, and to Rule 26(b)(1), which embeds a proportionality analysis into the concept of relevance for discovery purposes (Pls.' Reply at 4-5). Plaintiffs claim that allowing Mr. Moore's reports to stand would run counter to the purpose of those rules by engendering a responsive report by plaintiffs as well as a new round of expert depositions, and thus needlessly increasing the cost of litigation. We are skeptical that allowing Mr. Moore's reports to stand (at least in part) must inexorably lead to those consequences. If Mr. Moore's report is as derivative of Mr. Martin's report as plaintiffs claim, there may be no need to depose him or to have a rebuttal report. And, if at the end of the litigation it is clear that defendant used Mr. Moore's reports as a means to needlessly inflict costs on plaintiffs, there are other rules that are available through which plaintiffs may seek relief. *See* Fed. R. Civ. P. 26(g)(1)(B)(ii) (by signing a paper served in discovery, a lawyer or party certifies that to the best of his or her knowledge, information and belief formed after a reasonable inquiry, the discovery was not served to "needlessly increase the

5

cost of litigation"); 28 U.S.C. § 1927 (costs may be assessed for conduct that "multiplies the proceedings in any case unreasonably and vexatiously").

## II.

In the alternative to seeking to strike Mr. Moore's expert opinions wholesale, plaintiffs contend that portions of Mr. Moore's invalidity (but not the non-infringement) expert reports should be stricken for "containing material beyond the scope of Motio's L.P.R. 3.1 disclosures" (Pls.' Mot. at 7). The parties filed their final invalidity and infringement contentions on January 25, 2013 (doc. # 52). Pursuant to L.P.R. 3.1, a party's final invalidity contentions shall contain the information required under L.P.R. 2.3(b) and (c). Local Patent Rule 2.3(b) states that invalidity contentions "must contain" the following information:

> (1) identification, with particularity, of each item of prior art that allegedly anticipates each asserted claim or renders it obvious . . .;
>
> (2) a statement of whether each item of prior art allegedly anticipates each asserted claim or renders it obvious. [I]f a combination of items of prior art allegedly makes a claim obvious, each such combination, and the reasons to combine such items must be identified;
>
> (3) a chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found, including for each element that such party contends is governed by 35 [U.S.C.] § 112(6), a description of the claimed function of that element and the identity of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function . . .

L.P.R. 2.3(b). Parties may amend their final invalidity contentions "only by order of the Court upon a showing of good cause and absence of unfair prejudice to opposing parties, made promptly upon discovery of the basis for the amendment." L.P.R. 3.4. Motio has never sought leave to amend its final invalidity contentions.

Plaintiffs argue that this Court should strike three sections of Mr. Moore's invalidity report on the '863 Patent and one section of Mr. Moore's invalidity report on the '589 Patent for

6

containing material beyond the scope of Motio's L.P.R. 3.1 disclosures. We address each of plaintiffs' contentions in turn.

### A.

Plaintiffs ask this Court to strike Mr. Moore's opinion that the '863 Patent is invalid due to the "Boeing SDK Engagement" because it was not raised previously in Motio's L.P.R. 3.1 invalidity contentions (Pls.' Mot. at 7-8). Motio has agreed not to rely upon the Boeing SDK engagement and to "withdraw" Mr. Moore's reference to it, but Motio does not specify which paragraphs it would withdraw from Mr. Moore's '863 Patent invalidity report (doc. # 540: Motio's Br. in Opp'n to Pls.' Mot. to Strike Expert Reports at 3).

Plaintiffs contend that this Court should strike paragraphs 63 through 86 and Exhibit D of Mr. Moore's '863 Patent invalidity report in order to remove Mr. Moore's opinion that the '863 Patent is invalid due to the Boeing SDK engagement (Pls.' Mot. at 7-8; *see also* Pls.' Mot., Ex. 4: Moore's '863 Patent Invalidity Report). Motio has not responded to plaintiffs' assertion that these are the portions of the report that tie back to the Boeing SDK engagement. Thus, we grant plaintiffs' motion to strike paragraphs 63 through 86 and Exhibit D of Mr. Moore's '863 Patent invalidity report.

### B.

Plaintiffs next argue that Mr. Moore's anticipation analysis in his '863 Patent invalidity report should be stricken because it relies on the previously undisclosed "Business Objects XI White Paper" ("White Paper") (Pls.' Mot. at 8). Motio does not dispute that the Business Objects XI White Paper was not disclosed in its final invalidity contentions (Motio's Opp'n at 4). However, Motio argues that Mr. Moore should nevertheless be allowed to rely on the White Paper because Mr. Martin referred to it in his expert report and plaintiffs' expert discussed

portions of the White Paper in his rebuttal report (*Id.*). Moreover, Motio contends that Business Objects is a business intelligence system, similar to Cognos, which is known to anyone in the business intelligence industry, including plaintiffs, and that the White Paper provides only background information on Business Objects and "expounds upon" what is already in Motio's contentions, rather than introducing new theories of invalidity (*Id.*).[2]

Motio's argument that the White Paper is merely background information -- and not a theory of invalidity -- is belied by Mr. Moore's '863 Patent invalidity report. In it, Mr. Moore states that it is his opinion that "APOS Object Manager (in combination with BusinessObjects XI) constitutes prior art to the '863 Patent" (Moore's '863 Patent Invalidity Report, ¶ 49).[3] Furthermore, Mr. Moore states that "[w]hen installed to work in conjunction with an installation of BusinessObjects XI, APOS Object Manager provides an application and user interface by which a user can initiate a number of the elements that are described in the Asserted Claims of the '863 Patent" (*Id.*, ¶ 53).

The analysis in *Pactiv Corp. v. Multisorb Techs., Inc.*, No. 10 C 461, 2013 WL 2384249 (N.D. Ill. May 29, 2013), is instructive here. In that case, in response to the defendant's contention that portions of the plaintiff's expert's report should be stricken because it disclosed new prior art that was not included in the plaintiff's L.P.R. 3.1 contentions, the plaintiff argued that the new references "only provided context and were included as complementary to understanding the invalidity references." *Id.* at * 2 (internal citations omitted). The district court judge called this description of the new material in the expert report an attempt "to circumvent

---

[2]Motio states that plaintiffs made some of the "same argument[s]" in their summary judgment motion before the district court judge (*see* Motio's Opp'n at 3 and 5 n.2). We do not defer ruling here because our determination of whether to strike certain arguments in Mr. Moore's expert report is much narrower -- and does not encroach upon -- the determination that the district court judge will make of whether to grant summary judgment to plaintiffs (*see* doc. # 496).

[3]In their briefs, both parties refer to the subject of the White Paper as "Business Objects," but Mr. Moore's expert report refers to it as "BusinessObjects."

the disclosure requirements of our Local Patent Rules by offering such materials as background." *Id.* The court reasoned that "[i]f these new materials are not prior art, not necessary references, and not something that their expert relied upon, then there is truly no reason for them to be in the Report. If, however, these materials are prior art, then they should have been disclosed over a year ago with the Invalidity Contentions pursuant to Local Patent Rule 3.1." *Id.* Like the party in *Pactiv*, if Motio wished to have Mr. Moore rely on the White Paper, it should have identified that material as prior art in its L.P.R. 3.1 contentions or timely moved for leave to amend its contentions to include it. This Court will not now permit Motio "to circumvent the disclosure requirements of our Local Patent Rules by offering such materials as background" in an expert report. *Id.*

Moreover, the fact that Mr. Moore uses the White Paper as prior art not standing alone, but in combination with other prior art, does not render his reliance on the White Paper merely background information. "[I]f a combination of items of prior art allegedly makes a claim obvious, each such combination, and the reasons to combine such items must be identified." L.P.R. 2.3(b)(2). Thus, in *Pactiv*, 2013 WL 2384249, at *1, the court granted the defendant's motion to strike portions of the plaintiff's expert report where that report contained new invalidity arguments by relying on combinations and citations of prior art not disclosed previously in its invalidity contentions. Likewise, Mr. Moore's introduction of the White Paper as prior art in combination with other prior art introduced a new theory of invalidity that was not included in Motio's L.P.R. 3.1 contentions.

In addition, we disagree with Motio that Mr. Moore should be allowed to rely on the White Paper because Mr. Martin (defendant's expert) and plaintiffs' expert discussed the White Paper in their reports, and it was known in the industry. The Local Patent Rules are clear: if the

White Paper prior art reference was known to Motio, then Motio was required to have disclosed the White Paper under L.P.R. 3.1 and 2.3(b), or to have sought leave to amend its invalidity contentions to include it. The fact that the defense expert, Mr. Martin, discussed it in his report and plaintiff's expert then did so in a rebuttal report does not excuse Motio of its threshold failure to comply with the Local Patent Rules. To the contrary, this highlights the vice in the approach Motio advocates. One of the purposes of final invalidity contentions is to give notice to plaintiffs of the defendant's contentions, and the bases for them, prior to expert discovery, because "there is much for a plaintiff to do. 'Witnesses may have to review the document(s), and rebuttal evidence may have to be sought out and examined.'" *Minemyer v. B-Roc Representatives, Inc.*, No. 07 C 1763, 2010 WL 3787093, at *5-6 (N.D. Ill. Sept. 21, 2010) (quoting *Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 879 (Fed. Cir. 1986)). *See also Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1282-83 (Fed. Cir. 2012) (affirming district court's decision to preclude party from relying on drawings as prior art that were not timely produced because the opposing party "would need to depose people and subpoena records to defend against testimony that these drawings would elicit"); *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 551 (Fed. Cir. 1998) (affirming district court's decision to exclude a patent as a prior art reference at trial because it was submitted long after the close of discovery). It would turn the local rule on its head to allow a defendant to withhold prior art references from its final invalidity contentions, only to spring them on the plaintiff in the defense expert report.

The ruling in *Pactiv* is again instructive here. In that case, some of the new materials included in the plaintiff's expert's report were referred to in the patents-in-suit. *Pactiv*, 2013 WL 2384249, at *2. Nevertheless, the district court judge held that "[i]f they are new prior art, they were required to be disclosed previously by our Local Patent Rules. It would be improper to

allow an expert to rely on undisclosed prior art merely because it was cited in an asserted patent." *Id.* Similarly, in this case, Mr. Moore may not rely on the White Paper merely because it was cited in other expert reports, where Motio failed to disclose it previously in its L.P.R. 3.1 contentions as required by our Local Patent Rules.

The Federal Circuit "defer[s] to the district court when interpreting and enforcing local rules so as not to frustrate local attempts to manage patent cases according to prescribed guidelines." *Howmedica Osteonics Corp. v. Zimmer, Inc.*, -- F.3d --, 2016 WL 2754049, at *9 (Fed. Cir. May 12, 2016) (internal citations quotations omitted). There is "nothing in the Federal Rules that is inconsistent with local rules requiring the early disclosure of infringement and invalidity contentions and *requiring amendments to contentions to be filed with diligence.*" *Id.* (emphasis in original) (internal citations quotations omitted). In *Howmedica*, the Federal Circuit affirmed the district court's decision to preclude the plaintiff from asserting an infringement theory that was not disclosed in the plaintiff's infringement contentions -- and the plaintiff never sought to amend the contentions to include the theory -- as required under the district's local patent rules. *Id.* at *8-9. Our decision to bar Mr. Moore from relying on the White Paper comports with the Federal Circuit's standards.

Plaintiffs contend that this Court should strike paragraphs 49 through 62 and Exhibit C of Mr. Moore's '863 Patent invalidity report because they rely on the White Paper (Pls.' Mot. at 8). Although Motio generally disputes striking Mr. Moore's reliance on the White Paper, Motio does not respond to plaintiffs' contention that paragraphs 49 through 62 and Exhibit C encompass the subject matter at issue. Thus, we grant plaintiffs' motion to strike paragraphs 49 through 62 and Exhibit C of Mr. Moore's '863 Patent invalidity report.

## C.

Plaintiffs also contend that Mr. Moore's obviousness analysis concerning MotioCI 1.0 in his '863 Patent invalidity report should be stricken because it relies on five pages of documents that were not identified in Motio's L.P.R. 3.1 disclosures as prior art demonstrating obviousness (Pls.' Mot. at 9; Pls.' Reply at 8). In its final invalidity contentions, Motio disclosed MotioCI as a prior art reference that, both standing alone and in combination, rendered eight of the claims in the '863 Patent invalid (Pls.' Mot., Ex. 11: Motio's Final Invalidity Contentions at 13-15). In support of this contention, Motio cited to more than 100 pages of documents it had produced to plaintiff (*Id.*).

In his invalidity expert report on the '863 Patent, Mr. Moore cites to seventeen pages of documents in support of his opinion that MotioCI 1.0 constitutes prior art rendering claims in plaintiffs' '863 Patent invalid (Moore's '863 Patent Invalidity Report at 22-25). Motio does not dispute that five of these pages were not included in its L.P.R. 3.1 contentions (Motio's Opp'n at 6). However, Motio contends that these additional documents are not grounds to strike Mr. Moore's obviousness analysis because they do not add a new theory of liability, and they were produced in discovery (*Id.*). Plaintiffs respond that the addition of these documents "necessarily modifies Mr. Moore's obviousness theory—which is premised on a combination of references," and prejudices plaintiffs, who had no opportunity to question witnesses about them (Pls.' Reply at 8-9).

We find that plaintiffs' allegation of prejudice is real. Plaintiffs were entitled to have the opportunity to question witnesses about the evidence purporting to support a theory of invalidity. The fact that Motio produced these five pages along with thousands of other pages of documents does not mitigate this prejudice. On this issue, Motio again circumvented the Local Patent Rules,

and Motio has not presented any reason for failing to disclose these documents in its L.P.R. 3.1 contentions or to seek to amend its contentions to include them. "If these new materials are not prior art, not necessary references, and not something that their expert relied upon, then there is truly no reason for them to be in the Report." *Pactiv*, 2013 WL 2384249, at*2. If, however, these documents were prior art, necessary references, or something that Mr. Moore relied upon, then they should have been disclosed in Motio's invalidity contentions. *Id.*

However, we do not agree that the inclusion of the five additional documents requires that Mr. Moore's entire obviousness analysis based on MotioCI 1.0 should be stricken. Rather, we will strike the portions of Mr. Moore's '863 Patent invalidity report that rely on the documents not disclosed in the L.P.R. 3.1 contentions: paragraphs 90, 92, 95, 96, 97, and 98.

**D.**

With regard to Mr. Moore's invalidity report on the '589 Patent, plaintiffs argue that Mr. Moore's anticipation analysis with regard to MotioCI should be stricken because MotioCI was previously disclosed only as an obviousness reference, and not as a basis for invalidity based on anticipation (Pls.' Mot. at 9). In his report, Mr. Moore opines that MotioCI, when used in conjunction with other prior art, constitutes prior art to the '589 Patent and anticipates all of the claim elements of the asserted claims of the '589 Patent (Pls.' Mot., Ex. 3: Moore's '589 Patent Invalidity Report, ¶¶ 48-49). By contrast, in Motio's final invalidity contentions, Motio stated that MotioCI, viewed in conjunction with other prior art, "would have been obvious to combine" (Motio's Final Invalidity Contentions at 11).

Motio argues that this is not a basis to strike Mr. Moore's MotioCI anticipation opinion because his analysis and argument are the same as those set forth in Motio's L.P.R. 3.1 contentions -- and rely upon the same materials and come to the same conclusion that was

13

asserted by Motio in its L.P.R. 3.1 contentions -- despite Mr. Moore framing the issue as one of anticipation rather than obviousness (Motio's Opp'n at 5). Plaintiffs dispute that Motio's anticipation and obviousness analyses are the same because they are "completely different theories of invalidity governed by different statutes (35 U.S.C. §§ 102 and 103)" and "have different evidentiary requirements" (Pls.' Reply at 7).

We agree with plaintiffs. "[A]nticipation and obviousness are separate conditions of patentability, requiring different tests and different elements of proof." *Minkin v. Gibbons, P.C.*, 680 F.3d 1341, 1351 (Fed. Cir. 2012). Indeed, Local Patent Rule 2.3(b)(2) specifically requires a defendant to disclose "whether each item of prior art allegedly anticipates each asserted claim or renders it obvious." In other words, invalidity contentions must disclose not only a citation to prior art but also the specific purpose for which it is cited. In *Minkin*, the party attempted the reverse of what Motio attempts here -- "to recast its [expert's] anticipation analysis as sufficient for nonobviousness purposes." *Minkin*, 680 F.3d at 1351-52. The Federal Circuit held that this attempt was "unavailing" because the expert reports failed even to discuss nonobviousness. *Id.*

Motio's failure to include in its L.P.R. 3.1 contentions a theory of invalidity of the '589 patent based on anticipation of the MotioCI prior art, and Motio's failure to seek leave to amend its L.P.R. 3.1 contentions to include an anticipation theory with regard to MotioCI, prevent Mr. Moore from offering that legal theory in his expert report now. Plaintiffs assert that Mr. Moore's anticipation analysis with regard to MotioCI in his '589 Patent invalidity report is included in paragraphs 44 through 49 and Exhibit C to Mr. Moore's '589 invalidity report and should be stricken (Pls.' Reply at 8). As we agree that Mr. Moore's anticipation analysis with regard to MotioCI should be stricken, we will strike these paragraphs and Exhibit C from Mr. Moore's '589 Patent invalidity report.

## III.

Lastly, plaintiffs seek to strike the paragraph in each of Mr. Moore's expert reports that purports to adopt wholesale the contentions and conclusions of Motio's non-infringement and invalidity contentions, specifically: (1) paragraph 37 of Mr. Moore's '863 Patent Non-infringement Report; (2) paragraph 32 of Mr. Moore '589 Patent Non-infringement Report; (3) paragraph 41 of Mr. Moore's '589 Patent Invalidity Report; and (4) paragraph 46 of Mr. Moore's '863 Patent Invalidity Report (Pls.' Mot. at 9-10). In these paragraphs, Mr. Moore states that:

> The following opinions focus on only certain elements of the Asserted Claims of the ['863/'589] Patent. The omission of discussion regarding other elements of the Asserted Claims of the ['863/'589] Patent is not intended to indicate that such elements are practiced by the Accused Products and/or that any positions set forth by Avnet or its expert(s) are correct. Indeed, I was actively involved in analysis and preparation of Motio's Preliminary and Final Invalidity and Noninfringement Contentions in this litigation, and agree with and adopt the conclusions set forth therein.

Motio agrees that Mr. Moore's report may not incorporate by reference all of Motio's contentions, but Motio objects to striking the entirety of the paragraphs "because they contain other language that is not at issue" (Motio's Opp'n at 6). Rather, Motio proposes striking the wording at the end of these paragraphs: "and agree with and adopt the conclusions set forth therein" (*Id.* at 7). In reply, plaintiffs misconstrue Motio's opposition, stating that Motio does not contest striking the paragraphs listed above (Pls.' Reply at 9).

Despite this error, we agree with plaintiffs that the entirety of the paragraphs cited above should be stricken. Like the phrase "and agree with and adopt the conclusions set forth therein," the remainder of the paragraphs address matters that were omitted from the discussion in Mr. Moore's expert report. It is axiomatic that experts may not testify on issues that they did not discuss in their expert reports. *See, e.g., Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) (holding that the district court did not

abuse its discretion when it excluded expert testimony that was not included in the expert report because "[a]n expert witness may not testify to subject matter beyond the scope of the witness's expert report unless the failure to include that information in the report was substantially justified or harmless."). Motio has not explained what legitimate purpose is served by the portions of the paragraphs it seeks to preserve. The aforementioned four paragraphs are not properly part of Mr. Moore's expert reports, and we order them stricken in their entirety.

## CONCLUSION

For the foregoing reasons, we grant in part and deny in part plaintiffs' motion to strike Mr. Moore's four expert reports (doc. # 512). Specifically, the Court grants plaintiffs' motion to strike: (1) paragraphs 46, 49 through 86, 90, 92, 95, 96, 97, and 98 and Exhibits C and D of Mr. Moore's '863 Patent Invalidity Report (Pls.' Mot., Ex. 4); (2) paragraphs 41, 44 through 49 and Exhibit C to Mr. Moore's '589 Patent Invalidity Report (Pls.' Mot., Ex. 3); (3) paragraph 37 of Mr. Moore's '863 Patent Non-infringement Report (Pls.' Mot., Ex. 1); and (4) paragraph 32 of Mr. Moore '589 Patent Non-infringement Report (Pls.' Mot., Ex. 2). The remainder of plaintiffs' motion, including their request for fees, is denied.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: June 15, 2016